SCANNED
DATE: 11/23/04
BY:_____ Tom

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

# 04 - 12466 JLT

MARK MEDEIROS,
      Plaintiff     )
                )

VS.                  )      **CIVIL ACTION NO.**

JEFFERSON PILOT FINANCIAL ~~MAGISTRATE JUDGE~~ )
INSURANCE COMPANY,       )
      Defendant    )

RECEIPT #
AMOUNT $ 50
SUMMONS ISSUED Yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. Tom
DATE 11/22/04

## COMPLAINT

## PARTIES

1.    The Plaintiff, Mark Medeiros, is an adult individual, born June 1, 1962, and is a resident of the Town of Westport, Bristol County, Massachusetts.

2.    The Defendant JEFFERSON PILOT FINANCIAL INSURANCE COMPANY is a business corporation engaged in the business of insurance, with a principal place of business in the City of Greensboro, North Carolina, and is registered and/or licensed as such with the Massachusetts Division of Insurance, NAIC Number 70254.

## DECLARATION OF FACTS

3.    At all times relevant, prior to and including December 13, 2002, the Plaintiff was an employee of the Curtain Factory Outlet, Inc., Fall River Massachusetts, working as a truck driver, shipping clerk and stock clerk, earning $665.00 per week before taxes.

4    As of April December 13, 2002, and at all other times relevant, the Defendant was engaged in the business of insurance in the Commonwealth of Massachusetts, and was providing group Long Term Disability (LTD) coverage for the employees of the

Curtain Factory Outlet, Inc., under Policy No. 000010024539, effective January 1, 2000. (A true copy of said LTD group policy is attached hereto as Exhibit A).

5    The Curtain Factory Outlet, Inc., LTD policy was part of an employee-benefit plan as that term is used in 29 U.S.C. Sect. 1001, et seq., known as the Employee Retirement Income Security Act (ERISA), and the administration, interpretation and enforcement of said LTD policy are subject to the terms of the ERISA statute.

6    As of December 13, 2002, and at all other times relevant, the Plaintiff Mark Medeiros was an eligible employee under the aforesaid LTD group policy.

7.    The aforesaid LTD Insurance Policy (Exhibit A) accurately sets forth the rights and obligations of both the Plaintiff and the Defendant under the long term disability coverage provided by Defendant to the employees of the Curtain Factory Outlet, Inc.

8    The disability coverage provided by Defendant under said LTD policy included an own-occupation disability benefit for the first 24 months of disability preventing the employee from performing the material duties of his  regular occupation, subject to a 180-day elimination period, and a continuing benefit after such 24-months of own-occupation disability for disability preventing the employee from performing any occupation for which he may be reasonably qualified by training, education or experience.

9    The employee's LTD benefit under the Curtain Factory Outlet, Inc.'s group LTD policy is computed at 60 percent of basic monthly earnings.

10.    An eligible employee under the Curtain Factory Outlet LTD plan is entitled to benefits after the end of the elimination period upon the submission of proof to the

Defendant that he is disabled due to sickness or injury and requires the regular
attendance of a physician.

11.    On or about December 14, 2002, the Plaintiff became totally disabled by reason of
severe illness, diagnosed as Multiple Sclerosis (MS), which prevents him from
performing the material duties of his occupation as truck driver, shipping clerk
and/or stock clerk, and which prevents him from performing the material duties
of any other occupation for which he may be qualified by education, training or
experience.

12.    Because of such disabling illness, the Plaintiff stopped working as of December 14,
2002, on the advice of his treating physicians and he has at all times relevant
remained under the regular attendance of said physicians.

13.    On or about January 1, 2003, Plaintiff filed his claim for benefits under the
Curtain Factory Outlet plan on a form provided by the Defendant. (A true copy of
that claim form is attached hereto as Exhibit B).

14.    In support of his claim, the Plaintiff submitted to the Defendant his Attending
Physician's Statement from Carlos Kase, M.D., which confirmed Plaintiff's
disability due to Multiple Sclerosis. (A true copy of that attending physician's
statement is attached hereto as Exhibit C).

15.    In further support of his claim, the Plaintiff has submitted the records and reports
of Dr. Kase and of his other attending physicians who confirm the diagnosis of
Multiple Sclerosis and its disabling effects which have prevented Plaintiff from
from performing the material duties of his regular occupation or any other occupation
for which he may be otherwise qualified.

3

16.     On July 8, 2003, the Defendant Jefferson Pilot Financial Insurance Company denied Plaintiff's claim for benefits under the Curtain Factory Outlet, Inc.'s LTD plan, stating that any administrative appeal from such denial must be submitted to Jefferson Pilot Financial Insurance Company within 180 days from that date; and on August 25, 2003, Plaintiff submitted a timely request for appeal.

17.     On September 17, 2003, the Defendant issued a second denial of Plaintiff's LTD claim, which stated that Plaintiff had exhausted the first level of appeal and that any further administrative appeal must be submitted within 180 days from that date.

18.     On November 21, 2003, Plaintiff submitted a timely further request for appeal to the Defendant, and additional medical and vocational evidence was subsequently submitted to the Defendant on this LTD claim to be made part of the record.

19.     The record as developed by the Defendant establishes by substantial evidence that Plaintiff is totally disabled from performing the material duties of his usual occupation as truck driver, shipping clerk and/or stock clerk, and is further disabled from performing any other occupation for which he may be qualified by education, training or experience, by reason of his Multiple Sclerosis and the functional impairments caused by such illness.

20.     By reason of such total disability, Plaintiff is entitled to benefits under the Curtain Factory Outlet, Inc., LTD plan, beginning from the end of the elimination period on June 14, 2003, and continuing.

21.     Plaintiff has complied with all procedures stated in the Curtain Factory Outlet, Inc., LTD plan for presenting his claim, and has complied with all specific requests from Defendant for information on this claim.

22.   On June 2, 2004, the Defendant issued its final denial of Plaintiff's LTD claim, stating that all administrative appeals were exhausted and acknowledging Plaintiff's right to seek judicial review of his claim.

## COUNT I:   DENIAL CONTRARY TO SUBSTANTIAL EVIDENCE

23.   Defendant's denial of Plaintiff's LTD claim was contrary to the terms of the Curtain Factory Outlet, Inc., LTD plan and was contrary to the substantial medical and vocational evidence of record which establishes Plaintiff's total disability under said plan at all times from and after December 13, 2002; and Defendant is liable to Plaintiff therefor for past due benefits in the amount of $29,925 through November 19, 2004, and continuing thereafter at the rate of $1,715.70 per month.

## COUNT II:   DENIAL NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

24.   Defendant's denial of Plaintiff's LTD claim was not based on any substantial medical and/or vocational evidence contained in the claim file; and Defendant is liable to Plaintiff therefor for past due benefits in the amount of $29,925, through November 19, 2004, and continuing thereafter at the rate of $1,715.70 per month.

## COUNT III:  DENIAL MADE WITHOUT REASONABLE INVESTIGATION

25.   Defendant's denial of Plaintiff's LTD claim was made without conducting a reasonable and thorough investigation, based upon all available information as to Plaintiff's medical and vocational status; and Defendant is liable to Plaintiff therefor for past due benefits in the amount of $29,925 through November 19, 2004, and continuing thereafter at the rate of $1,715.70 per month.

## COUNT IV:  DENIAL WAS ARBITRARY AND CAPRICIOUS

26.     Defendant's denial of Plaintiff's LTD claim was arbitrary and capricious, and it was unreasonable as contrary to the terms of the Curtain Factory Outlet, Inc., LTD plan and contrary to the provisions of 29 U.S.C. Sect. 1133; and Defendant is liable to Plaintiff therefor for past due benefits in the amount of $29,925 through November 19, 2004, and continuing thereafter at the rate of $1,715.70 per month.

**WHEREFORE, Plaintiff demands judgment and relief as follows:**

**First,** on Counts I, II, III and IV, that the Court make findings that Plaintiff is entitled to disability benefits under the Curtain Factory Outlet, Inc., LTD plan at the rate of $1,715.70 per month beginning on June 16, 2003, and continuing, with past due benefits through November 19, 2004, payable in the amount of $29,925 plus interest, costs of the action and attorney's fees;

**Second,** in the alternative on Count III, that the matter be remanded to the Defendant for further administrative review to determine Plaintiff's entitlement to benefits under the Curtain Factory Outlet, Inc., LTD plan, and/or the amount of such benefits due and past due; and

**Third,** such other relief as the Court may grant on the facts as pleaded herein.


Dated:  November 19, 2004                    For the Plaintiff

                                            Richard K. Latimer, BBO #287840
                                            Kistin Babitsky Latimer & Beitman
                                            Box 590, 13 Falmouth Heights Road
                                            Falmouth, MA  02541
                                            (508) 540-1606

In Consideration of the application for this Policy made by

Curtain Factory Outlet, Inc.

(herein called the Policyholder)

and the payment of all premiums when due, Guarantee Life Insurance Company agrees to make the payments provided in this Policy to the person or persons entitled to them.

Policy No.     000010024539          Policy Effective Date:     January 1, 2000

Monthly Premium: .74% of Total Covered Payroll per Month

The above rate is guaranteed until January 1, 2002, unless any of the Policy's terms are changed.

Policy Anniversaries will be annually beginning on:  January 1, 2002

The first premium is due on the Policy's Effective Date, and subsequent premiums are due on February 1, 2000, and on the same day of each month thereafter.

The Policy is delivered in the state of Massachusetts and subject to the laws of that jurisdiction.

Guarantee Life Insurance Company has executed this Policy at its Home Office in Omaha, Nebraska this 15th day of February, 2000.

_Richard A. Spellman_
Secretary

_R. D. Bates_
President

## GROUP LONG TERM DISABILITY INSURANCE POLICY

# TABLE OF CONTENTS

Schedule of Benefits ............................................................................................3

Definitions.............................................................................................................4

General Provisions ...............................................................................................9

Claims Procedures .............................................................................................11

Eligibility ............................................................................................................13

Effective Dates ...................................................................................................13

Individual Termination .....................................................................................15

Policy Termination.............................................................................................16

Premiums and Premium Rates ........................................................................17

Total Disability Monthly Benefit. ...................................................................18

Partial Disability Monthly Benefit. ................................................................19

Other Income Benefits ......................................................................................21

Recurrent Disability .........................................................................................22

Exclusions............................................................................................................23

Specified Injuries or Sicknesses Limitation.................................................24

Voluntary Vocational Rehabilitation Benefit Provision .............................25

Reasonable Accommodation Benefit...............................................................26

Prior Insurance Credit Upon Transfer of Insurance Carriers ..................27

Family Income Benefit.......................................................................................28

GL3001-LTD-2

01/01/00

Curtain Factory Outlet, Inc.
000010024539

## SCHEDULE OF BENEFITS

ELIGIBLE CLASS means: Class 1    Executives and All Full-Time Managers, Assistant Managers and Bookkeepers

MINIMUM HOURS PER WEEK: 30

BENEFIT PERCENTAGE:    60%

MAXIMUM MONTHLY BENEFIT:    $6,000

MINIMUM MONTHLY BENEFIT:    $50

Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 days of Disability due to the same or a related Sickness or Injury, which must be accumulated within a 180 day period.

MAXIMUM BENEFIT PERIOD (For Sickness or Injury):  The Insured Person's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending at the end of the Maximum Benefit Period for Insured Employees.

WAITING PERIOD:    One year of continuous Active Work  (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:    Insured employees are not required to contribute to the cost of the coverage.

GL3001-LTD-SB

01/01/00

Curtain Factory Outlet, Inc.
000010024539

## SCHEDULE OF BENEFITS

ELIGIBLE CLASS means:  Class 2      All Other Full-Time Employees

MINIMUM HOURS PER WEEK:  30

BENEFIT PERCENTAGE:      60%

MAXIMUM MONTHLY BENEFIT:      $6,000

MINIMUM MONTHLY BENEFIT:      $50

Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 days of Disability due to the same or a related Sickness or Injury, which must be accumulated within a 180 day period.

MAXIMUM BENEFIT PERIOD (For Sickness or Injury):  The Insured Person's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:      One year of continuous Active Work  (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:      Insured employees are not required to contribute to the cost of the coverage.

GL3001-LTD-SB

01/01/00

# DEFINITIONS

As used throughout this Policy, the following terms shall have the meanings indicated below. Other parts of this Policy contain definitions specific to those provisions.

**ACTIVE WORK** or **ACTIVELY-AT-WORK** means an Employee's full-time performance of all main duties of such Employee's occupation at:

1. the Employer's usual place of business; or
2. any other business location to which the Employer requires the Employee to travel.

Unless Disabled on the prior workday or on the day of absence, an Employee will be considered Actively at Work on the following days:

1. a Saturday, Sunday or holiday which is not a scheduled workday;
2. a paid vacation day or other scheduled or unscheduled non-workday; or
3. an excused or emergency leave of absence (except a medical leave) of 30 days or less.

**ANNUAL SALARY** means the Insured Employee's Basic Monthly Earnings or Predisability Income multiplied by 12.

**BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** means the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the determination date. The determination date is the last day worked just prior to the date the Disability begins.

It also includes:

1. commissions averaged over the 12 months just prior to the determination date or over the actual period of employment with the Employer just prior to that date, if shorter.

It does **not** include bonuses, overtime pay, or any other extra compensation. It does **not** include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the maximum covered earnings permitted by this Policy; whichever is less.

**COMPANY** means Guarantee Life Insurance Company, a Nebraska corporation, whose Home Office address is Guarantee Centre, 8801 Indian Hills Drive, Omaha, Nebraska 68114.

## DEFINITIONS
## (continued)

**DAY** or **DATE** means the period of time which begins at 12:01 a.m. and ends at 12:00 midnight, standard time, at the Policyholder's place of business. When used with regard to effective dates, it means 12:01 a.m. When used with regard to termination dates, it means 12:00 midnight.

**DISABLED** or **DISABILITY** means Totally Disabled and/or Partially Disabled.

**DISABILITY BENEFIT** when used with the term Retirement Plan, means a benefit which:
1. is payable under a Retirement Plan due to disability as defined in that plan; and
2. does not reduce the benefits which would have been paid as Retirement Benefits at the normal retirement age under the plan if the disability had not occurred.

If the payment of the benefit does cause such a reduction, the benefit will be deemed a Retirement Benefit as defined in this Policy.

**ELIGIBILITY WAITING PERIOD** means the period of time that:
1. begins with an Employee's most recent date of employment with the Employer; and
2. ends on the day prior to the day such Employee is eligible for coverage under this Policy.

**ELIMINATION PERIOD** means the number of days of Disability during which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits. It applies as follows.
1. The Elimination Period:
   (a) begins on the first day of Disability; and
   (b) is satisfied when the required number of days is accumulated within a period which does not exceed two times the Elimination Period.
   During a period of Disability, the Insured Employee may return to full-time work, at his or her own or any other occupation, for an accumulated number of days not to exceed the Elimination Period.
2. Only days of Disability due to the same or a related Sickness or Injury will count towards the Elimination Period. Days on which the Insured Employee returns to full-time work will not count towards the Elimination Period.

**EMPLOYEE** means a person:
1. whose employment with the Employer is:
   (a) on a regular full-time basis;
   (b) the person's principal occupation; and
   (c) for regular wage or salary;
2. who is regularly scheduled to work at such occupation at least the minimum number of hours shown in the Schedule of Benefits; and
3. who is a member of an Eligible Class which is eligible for coverage under this Policy;
4. who is not a temporary or seasonal employee; and
5. who is a citizen of the United States or legally works in the United States.

**EMPLOYER** means the Policyholder and includes any division, subsidiary or affiliated company named in the Application.

**EVIDENCE OF INSURABILITY** means a statement of proof of an Employee's medical history. The Company uses this to determine his or her acceptance for insurance, or for an increased amount of insurance. Such proof will be provided at the Employee's own expense.

## DEFINITIONS
### (continued)

**FAMILY OR MEDICAL LEAVE** means a leave of absence which is approved in writing by the Employer; and which is subject to:
1.  the federal Family and Medical Leave Act of 1993, and any amendments to it; or
2.  any similar state law requiring the Employer to grant family or medical leaves.

**INSURED EMPLOYEE** means an Employee for whom Policy coverage is in effect.

**INJURY** means bodily injury which is caused by and results directly from an accident, independently of all other causes.  For purposes of determining benefits under this Policy, a Disability will be considered due to an Injury only if:
1.  the Disability begins within 90 days after the Injury; or
2.  the Injury occurred while the Employee was insured under this Policy.

The term "Injury" shall **not** include any:
1.  condition to which a physical or mental sickness, the natural progression of a sickness, or the treatment of a sickness is a substantial contributing factor (based upon the preponderance of medical evidence);
2.  condition caused solely by emotional stress or mental trauma;
3.  repetitive trauma condition which results from repetitious, physically traumatic activities that occur over time;
4.  pregnancy; except for complications which result from a covered Injury;
5.  condition caused by infection; except pyogenic bacterial infection of a covered Injury; or
6.  condition caused by medical or surgical treatment; except when the treatment is needed solely because of a covered Injury.

## DEFINITIONS
### (continued)

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job duties which:
1.  are normally required to perform the Insured Person's regular occupation; and
2.  cannot reasonably be modified or omitted.

It includes those main duties as performed in the national workforce; **not** as performed for a certain firm or at a certain work site.

**MEDICALLY APPROPRIATE TREATMENT** means diagnostic services, consultation, care or services which are consistent with the symptoms or diagnosis causing the Insured Employee's Disability. Such treatment must be rendered:
1.  by a Physician whose license and any specialty are consistent with the disabling condition; and
2.  according to generally accepted, professionally recognized standards of medical practice.

**MONTHLY BENEFIT** means the amount payable monthly by the Company to the Insured Employee who is Totally or Partially Disabled.

**OWN OCCUPATION PERIOD** means a period as shown in the Schedule of Benefits.

**PARTIALLY DISABLED** or **PARTIAL DISABILITY** shall be as defined in the Partial Disability Monthly Benefit sections.

**PARTIAL DISABILITY EMPLOYMENT** means the Insured Employee is working at his or her own or any other occupation; but because of a Partial Disability:
1.  the Insured Employee's hours or production is reduced;
2.  one or more main duties of the job are reassigned; or
3.  the Insured Employee is working in a lower-paid occupation.

His or her current earnings must be at least 20% of Predisability Income, and may not exceed the percentage specified in the Partial Disability Benefit section.

**PHYSICIAN** means:
1.  a legally qualified medical doctor who is licensed to practice medicine, to prescribe and administer drugs, or to perform surgery; or
2.  any other duly licensed medical practitioner who is deemed by state law to be the same as a legally qualified medical doctor.

The medical doctor or other medical practitioner must be acting within the scope of his or her license; and must be qualified to provide medically appropriate treatment for the Insured Employee's disabling condition.

Physician does **not** include the Insured Employee or a relative of the Insured Employee receiving treatment. (Relatives include the Insured Employee's spouse, siblings, parents, children and grandparents; and his or her spouse's relatives of like degree.)

**POLICY** means this Group Long Term Disability Insurance Policy issued by the Company to the Policyholder.

**POLICYHOLDER** means the person, individual, firm, trust or other organization as shown on the Face Page of this Policy.

**PREDISABILITY INCOME** - See Basic Monthly Earnings.

## DEFINITIONS
### (continued)

**REGULAR CARE OF A PHYSICIAN** or **REGULAR ATTENDANCE OF A PHYSICIAN** means the Insured Employee:
1. personally visits a Physician, as often as medically required according to standard medical practice to effectively manage and treat his or her disabling condition; and
2. receives medically appropriate treatment, by a Physician whose license and any specialty are consistent with the disabling condition.

**REGULAR OCCUPATION** or **OWN OCCUPATION** means the occupation, trade or profession:
1. in which the Insured Employee was employed with the Employer prior to Disability; and
2. which was his or her primary source of earned income prior to Disability.

It includes any work in the same occupation for pay or profit; whether such work is with the Employer, with some other firm or on a self-employed basis. It includes the main duties of that occupation as performed in the national workforce; **not** as performed for a certain firm or at a certain work site.

**RETIREMENT BENEFIT** when used with the term Retirement Plan, means a benefit which:
1. is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;
2. does not represent contributions made by an Employee (payments which represent Employee contributions are deemed to be received over the Employee's expected remaining life regardless of when such payments are actually received); and
3. is payable upon:
   (a) early or normal retirement; or
   (b) disability, if the payment does reduce the benefit which would have been paid at the normal retirement age under the plan, if disability had not occurred.

**RETIREMENT PLAN** means a defined benefit or defined contribution plan which provides Retirement Benefits to Employees and which is not funded wholly by Employee contributions. The term shall **not** include any 401(k), profit-sharing or thrift plan; informal salary continuance plan; individual retirement account (IRA); tax sheltered annuity (TSA); stock ownership plan; or a non-qualified plan of deferred compensation. An Employer's Retirement Plan is deemed to include any Retirement Plan:
1. which is part of any federal, state, county, municipal or association retirement system; and
2. for which the Employee is eligible as a result of employment with the Employer.

**SICK LEAVE** or **ANY SALARY CONTINUANCE PLAN** means a plan which:
1. is established and maintained by the Employer for the benefit of Insured Employees; and
2. continues payment of all or part of an Insured Employee's Predisability Income for a specified period after he or she becomes Disabled.

It does **not** include compensation the Employer pays an Insured Employee for work actually performed during a Disability.

**SICKNESS** means illness, pregnancy or disease.

**TOTAL COVERED PAYROLL** means the total amount of Basic Monthly Earnings for all Employees insured under this Policy.

**TOTAL DISABILITY** or **TOTALLY DISABLED** shall be defined in the Total Disability Monthly Benefit section.

## GENERAL PROVISIONS

ENTIRE CONTRACT.  The entire contract between the parties shall consist of:
1.  this Policy and the Application (a copy of which is attached);
2.  the Employer's Participation Agreement, if any; and
3.  the Insured Employee's enrollment forms, if any.

In the absence of fraud, all statements made by the Policyholder and by Insured Employees are representations and not warranties.  No statement made by an Insured Employee will be used to contest the coverage provided by this Policy; unless a copy of the statement has been furnished to such Insured Employee.

AUTHORITY TO MAKE OR AMEND CONTRACT.  Only a Company Officer located in the Company's Home Office has the authority to:
1.  determine the insurability of a group or any individual within a group;
2.  make a contract in the Company's name;
3.  amend or waive any provision of this Policy; or
4.  extend the time for payment of any premium.

No change in this Policy will be valid; unless it is made in writing and signed by such a Company Officer.

INCONTESTABILITY.  Except for the non-payment of premiums or fraud, the Company may not contest the validity of this Policy as to any Insured Employee, after it has been in force for two years during his or her lifetime.

RESCISSION.  T he C ompany h as the right to rescind any insurance for which evidence of insurability was required, if:
1.  an Insured Employee incurs a claim during the first two years of coverage; and
2.  the Company discovers that the Insured Employee made a material misrepresentation on his or her enrollment form.

A material misrepresentation is an incomplete or untrue statement that caused the Company to issue coverage which it would have disapproved, had it known the truth.  To rescind means to cancel insurance back to its effective date.  In that event, the Company will refund all premium paid for the rescinded insurance, less any benefits paid for the Insured Employee's Disability.  The Company reserves the right to recover any claims paid in excess of such premiums.

NON-PARTICIPATION.  This is a non-participating Policy.  It will not share in the divisible surplus of the Company.

INFORMATION TO BE FURNISHED.  The Employer is required to furnish the Company any information needed to administer this Policy, including:
1.  information about Employees who become eligible for insurance; whose amounts of coverage change; and whose eligibility or coverage ends;
2.  occupational information and other facts that may be needed to manage a claim; and
3.  any other information that the Company may reasonably require.

The Company may inspect any of the Employer's records which relate to this Policy, at any reasonable time.

Clerical error by the Employer:
1.  will not affect insurance which otherwise would be in effect; and
2.  will not continue insurance which otherwise would be terminated.

Once an error is discovered, an equitable adjustment in premium will be made.  If a premium adjustment involves the return of unearned premium, the amount of the return will be limited to the 12-month period which precedes the date the Company receives proof that such an adjustment should be made.

GL3001-LTD-7 98

01/01/00

## GENERAL PROVISIONS
### (continued)

MISSTATEMENTS OF FACTS.  If relevant facts about any person were misstated:
1.    a fair adjustment of the premium will be made; and
2.    the true facts will decide if and in what amount insurance is valid under this Policy.

If an Insured Employee's age has been misstated; then any benefits shall be in the amount the paid premium would have purchased at the correct age.

ACTS OF THE POLICYHOLDER.  In administering this Policy, the Policyholder must:
1.    treat Employees the same in like situations; and
2.    allow the Company, without inquiry, to rely on its acts.

POLICYHOLDER'S AGENCY.  For all purposes of this Policy, the Policyholder acts on its own behalf or as Agent of the Employee.  Under no circumstances will the Policyholder be deemed the Agent of the Company.

COMPANY'S DISCRETIONARY AUTHORITY.  Except for those functions which this Policy specifically reserves to the Policyholder or Employer, the Company has sole authority to manage this Policy, to administer claims, to interpret Policy provisions, and to resolve questions arising under this Policy.  The Company's authority includes (but is not limited to) the right to:
1.    establish and enforce procedures for administering this Policy and claims under it;
2.    determine Employees' eligibility for insurance and entitlement to benefits;
3.    determine what information the Company reasonably requires to make such decisions; and
4.    resolve all matters when a claim review is requested.

Any decision the Company makes in the exercise of its authority shall be conclusive and binding.

CERTIFICATES.  The Employer will be furnished with individual Certificates for delivery to each Insured Employee.  These Certificates summarize the benefits provided by this Policy.  If there is a conflict between this Policy and the Certificate, this Policy will control.

CONFORMITY WITH STATE STATUTES.  If, on its effective date, any provision of this Policy conflicts with any applicable law; then the provision will be deemed to conform to the minimum requirements of the law.

CURRENCY.  In administering this Policy, all Predisability Income will be expressed in U.S. dollars; and all premium and benefit amounts must be paid in U.S. dollars.

WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE.  This Policy does not replace or provide benefits required by Workers' Compensation laws or any state disability insurance plan laws.

ASSIGNMENT.  The rights and benefits under this Policy may not be assigned.

GL3001-LTD-7 98

01/01/00

## CLAIMS PROCEDURES

**NOTICE OF CLAIM.** Written notice of claim must be given during the Elimination Period. The notice must be sent to the Company's Home Office. It should include:
1. the Insured Employee's name and address; and
2. the number of this Policy.
If this is not possible, written notice must be given as soon as it is reasonably possible.

**CLAIM FORMS.** When notice of claim is received, the Company will send claim forms to the Insured Employee. If the Company does not send the forms within 15 days; then the Insured Employee may send the Company written proof of Disability in a letter stating the date the Disability started, its cause and degree. The Company will periodically send the Insured Employee additional Claim Forms.

**PROOF OF CLAIM.** The Company must be given written proof of claim within 90 days after the end of the Elimination Period. If it was not reasonably possible to give written proof in the time required, the claim will not be reduced or denied solely for this reason; provided the proof is filed as soon as reasonably possible. In any event, proof of claim must be given no later than one year from such time. These time limits will not apply while an Insured Employee lacks legal capacity, however.

Proof of claim must be provided at the Insured Employee's own expense. It must show the date the Disability started, its cause and degree. It must show any restrictions on performing the duties of the Insured Employee's regular occupation. Documentation must include:
1. completed statements by the Insured Employee, the Employer and the attending Physician;
2. a signed authorization for the Company to obtain more information; and
3. any other items the Company may reasonably require in support of the claim.
Proof of continued Disability and regular attendance of a Physician must be given to the Company, within 60 days after the Company requests it; if it is not, benefits may be denied or suspended.

**EXAM OR AUTOPSY.** At anytime while a claim is pending, the Company may:
1. have the Insured Employee examined by a Physician, specialist or vocational rehabilitation expert of the Company's choice, as often as reasonably required; and
2. deny or suspend benefits for an Insured Employee who fails to attend an exam, without good cause; or who fails to cooperate with the examiner.
The Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS.** When the Company receives proof of claim, benefits payable under this Policy will be paid as follows.
1. Any Long Term Disability benefits will be paid monthly, during any period for which the Company is liable. If benefits are due for less than a month, they will be paid on a prorata basis. The daily rate will equal 1/30 of the monthly benefit.
2. Any balance which remains unpaid at the end of the period of liability will be paid immediately upon receipt of due written proof.

**TO WHOM PAYABLE.** All benefits are payable to the Insured Employee; except after his or her death benefits will be payable as follows.
1. Any Survivor Benefit will be payable in accord with that Policy provision.
2. Any other benefits will be payable to the Insured Employee's estate.

When a benefit becomes payable to the Insured Employee's estate, a minor or any other person who is not legally competent to give a valid receipt; then up to $2,000 may be paid to any relative of the Insured Employee that the Company finds entitled to payment. If payment is made in good faith to such a relative, the Company will not have to pay that benefit again.

**NOTICE OF CLAIM DECISION.** Within a reasonable time after receiving proof of loss, the Company will send the Insured Employee a written notice of their claim decision. If the Company denies any part of the claim, the written notice will:
1. explain the reason for the denial under the terms of this Policy; and
2. inform the Insured Employee of the right to a review of the Company's decision.
If the Insured Employee does not receive a written decision within 90 days after the Company receives his or her claim; then the Insured Employee has a right to an immediate review, as if the claim was denied.

GL3001-LTD-8 98

01/01/00

## CLAIMS PROCEDURES
### (continued)

REVIEW PROCEDURE.  Within 60 days after receiving a denial notice, the Insured Employee may request a claim review by sending the Company a written request, along with any written comments or other items to support the claim.  The Insured Employee may review certain non-privileged information relating to the request for review.

The Company will review the claim and send the Insured Employee a written notice of their decision within 60 days after receiving the request for review; or within 120 days, if special circumstances require an extension.  The notice will state the reasons for the Company's decision under the terms of this Policy.

RIGHT OF RECOVERY.  If benefits have been overpaid on any claim, full reimbursement to the Company is required within 60 days.  If reimbursement is not made, the Company has the right to:
1.    reduce future benefits until full reimbursement is made; and
2.    recover such overpayments from the Insured Employee or his or her estate.

Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, the Insured Employee's receipt of Other Income Benefits, or any other reason.

LEGAL ACTIONS.  No legal action to recover any benefits may be brought until sixty days after the required written proof of claim has been given.  No legal action may be brought more than three years after written proof of claim is required to be given.

GL3001-LTD-8 98

01/01/00

# ELIGIBILITY

**ELIGIBLE CLASSES.** The classes of Employees eligible for insurance are shown in the Schedule of Benefits. The Company has the right to review and terminate any or all classes eligible under this Policy, if any class ceases to be covered by this Policy.

**ELIGIBILITY DATE.** An Employee becomes eligible for coverage provided by this Policy on the later of:
1.  the Policy's effective date; or
2.  the date the Employee satisfies the Waiting Period.

Prior service in an Eligible Class will apply toward the Waiting Period, when:
1.  a former Employee is rehired within one year after his or her employment ends; or
2.  an Employee returns from a Family or Medical Leave within the leave period required by federal or state law (whichever is greater).

# EFFECTIVE DATES

**EFFECTIVE DATE.** Except as stated in the Delayed Effective Date provision, coverage for an Employee becomes effective at 12:01 a.m. on the latest of:
1.  the first day of the Insurance Month coinciding with or next following the date the Employee becomes eligible for coverage;
2.  the date the Employee makes written application for coverage; and signs:
    (a)  a payroll deduction order, if the Employees pay any part of the Policy premiums; or
    (b)  an order to pay premiums from the Employee's Flexible Benefits Plan account, if premiums are paid through such an account; or
3.  the date the Company approves the Employee's evidence of insurability, if required.

Evidence of insurability satisfactory to the Company must be submitted (at the Employee's expense) if:
1.  written application for coverage (or an increased amount of coverage) is made more than 31 days after the Employee becomes eligible for such coverage;
2.  coverage is elected after the Employee has requested:
    (a)  to terminate the insurance;
    (b)  to stop payroll deductions for the insurance; or
    (c)  to stop premium payments through a Flexible Benefits Plan account;
3.  coverage is elected after the Employee has caused insurance to lapse by failing to pay the required premium when due; or
4.  optional, supplemental, voluntary or Buy-Up Benefit coverage is elected in excess of any guaranteed issue amounts shown in the Schedule of Benefits.

**DELAYED EFFECTIVE DATE.** An Employee's Effective Date of any initial, increased or additional coverage will be delayed; if such Employee is not Actively-at-Work on the date that coverage would otherwise be effective. Coverage will take effect on the Employee's second consecutive day of Active Work.

GL3001-LTD-9 94

01/01/00

EFFECTIVE DATE FOR CHANGE IN ELIGIBLE CLASS. An Insured Employee may become a member of a different Eligible Class. Except as stated in the Delayed Effective Date provision, coverage under the different Eligible Class will be effective:

1.  immediately, if the different Eligible Class involves any reduction in coverage; or
2.  the first day of the month after the Insured Employee has been Actively-at-Work for at least 15 days, as a member of a different Eligible Class; if the different Eligible Class involves enhancement of any coverage.

REINSTATEMENT AFTER FAMILY OR MEDICAL LEAVE. A new Waiting Period and evidence of insurability will be waived for an Employee, upon return from an approved Family or Medical Leave, provided:

1.  the Employee returns within the leave period required by federal or state law (whichever is greater);
2.  the Employee applies for insurance or is enrolled under this Policy within 31 days after resuming Active Work; and
3.  the reinstated amount of insurance does not exceed the amount which terminated.

If the above conditions are met, the months of leave will count towards any unmet Pre-Existing Condition Exclusion period; and a new Pre-Existing Condition Exclusion will not apply to the reinstated amount of insurance. A new Pre-Existing Condition Exclusion will apply to any increased amount of insurance, however.

## INDIVIDUAL TERMINATION

INDIVIDUAL TERMINATION OF COVERAGE. An Insured Employee's coverage will terminate at 12:00 midnight on the earliest of:

1.   the d ate t his P olicy o r t he E mployer's p articipation terminates; but without prejudice to any claim incurred prior to termination;
2.   the date the Insured Employee's Class is no longer eligible for insurance;
3.   the date such Insured Employee ceases to be a member of an Eligible Class;
4.   the end of the period for which the last required premium has been paid; or
5.   the date on which the Insured Employee's employment with the Employer terminates; unless coverage is continued as provided below.

CONTINUATION. Ceasing Active Work is deemed termination of employment; but insurance may be continued as follows.

1.   **Ceasing Active Work**. If the Insured Employee ceases Active Work, and does not become eligible for similar group disability income coverage within 31 days after employment ends; then coverage may be continued:
     (a)   for 31 days;
     (b)   provided the Company receives the required premium from the Employer.

2.   **Disability**. If an Insured Employee is absent due to Total Disability, or is engaged in Partial Disability Employment; then Long Term Disability insurance may be continued during:
     (a)   the Elimination Period; provided the Company receives the required premium from the Employer; and
     (b)   the period for which Long Term Disability benefits are payable, without payment of premium.

3.   **Family or Medical Leave**. If an Insured Employee goes on an approved Family or Medical Leave, and is not entitled to continue insurance due to Disability, as provided above; then Long Term Disability insurance may be continued, until the earliest of:
     (a)   the end of the leave period approved by the Employer;
     (b)   the end of the leave period required by federal or state law (whichever is greater);
     (c)   the date the Insured Employee notifies the Employer that he or she will not return; or
     (d)   the date the Insured Employee begins employment with another employer;
     provided the Company receives the required premium from the Employer.

4.   **Lay-off o r O ther L eave**. When an Insured Employee goes on a temporary lay-off, or an approved leave of absence which is not subject to the federal Family and Medical Leave Act (or any similar state law); then Long Term Disability insurance may be continued:
     (a)   until the end of the calendar month following the month in which the lay-off or leave began;
     (b)   provided the Company receives the required premium from the Employer.

5.   **Plant Closing**. When an Insured Employee ceases Active Work due to a plant closing or partial closing (as defined by Massachusetts law); then insurance may be continued:
     (a)   for 90 days after the closing; or
     (b)   until he or she becomes eligible for similar group disability income coverage (whichever occurs first);
     provided the Company receives the required premium from the Employer.

When an Insured Employee is entitled to continue coverage in accord with two provisions shown above, he or she may elect the longer continuation period (but not both).

The Employer must not act so as to discriminate unfairly among Employees in similar situations. Insurance may not be continued when an Insured Employee ceases Active Work due to a labor dispute, strike, work slowdown or lockout.

INDIVIDUAL TERMINATION DURING DISABILITY. Termination of an Insured Employee's coverage during a Disability will have no effect on benefits payable for that period of Disability.

GL3001-LTD-10 98 MA

01/01/00

## POLICY TERMINATION

**POLICY TERMINATION BY THE COMPANY.** Until the premium rate has been in effect for at least 12 months, or any later Rate Guarantee Date agreed upon by the Company; the Company may terminate this Policy on the due date of any premium if:

1. the number of Insured Employees totals less than 10;
2. part of the premium is paid by the Insured Employee and less than 75% of those eligible for coverage are insured;
3. all of the premium is paid by the Policyholder and less than 100% of those eligible for coverage are insured;
4. the Policyholder fails to promptly furnish any information which the Company may reasonably require;
5. the Policyholder, without good cause, fails to perform its duties pertaining to this Policy in good faith.
6. the Company's liability is changed as a result of any change in federal, state or local law which affects this Policy;
7. the Policyholder or any covered division, subsidiary or affiliated company relocates;
8. the Policyholder or any covered subsidiary or affiliated company dissolves or merges;
9. a division, subsidiary or affiliated company is added to or removed from this Policy;
10. any coverage for one or more classes of Insured Employees ceases to be provided under this Policy;
11. the number of Insured Employees changes by 25% or more from the number of Insured Employees on the date this Policy took effect, or the most recent Rate Guarantee Date expired, if later; or
12. the Employer ceases to be covered under the state Workers' Compensation program or any other program of like intent.

After the premium rate has been in effect for at least 12 months, or any later Rate Guarantee Date agreed upon by the Company; the Company may terminate this Policy on the due date of any premium. Such termination may be with respect to the Policy as a whole, to any coverage(s) provided under it, or to any class of Insured Employees covered under it.

The Company will give the Policyholder at least 31 days' advance written notice of its intent to terminate this Policy.

**POLICY TERMINATION BY THE POLICYHOLDER.** The Policyholder may terminate this Policy at any time by giving the Company written notice. This Policy will then terminate on:

1. the date the Company receives the notice; or
2. some later date on which the Policyholder and the Company have agreed.

However, termination will not become effective during any period for which premium has been paid to the Company. The Policyholder remains liable for the payment of premiums to the date of termination.

**AUTOMATIC POLICY TERMINATION.** If any premium is not paid before the end of the Grace Period; then this Policy will terminate at the end of the Grace Period, without any action on the Company's part. The Policyholder remains liable for the payment of premiums to the date of termination.

**POLICY TERMINATION DURING DISABILITY.** Termination of this Policy or an Employer's participation during a Disability shall have no effect on benefits payable to the Insured Employee for that period of Disability.

GL3001-LTD-10 98 MA

01/01/00

## PREMIUMS AND PREMIUM RATES

**PAYMENT OF PREMIUM.**  No coverage provided by this Policy will be in effect until the first premium for such coverage is paid.  For coverage to remain in effect, the Employer must pay each subsequent premium on or before its due date at the Company's Home Office.  The premium must be paid in U.S. dollars.

**PREMIUM RATES.**  The initial premium rates for this Policy are shown on the Face Page of this Policy.  Premium rates are subject to change.

**PREMIUM RATE CHANGE.**  The Company may change any premium rate:
1. when this Policy's terms are changed:
   (a)  as agreed upon by the Policyholder and the Company; or
   (b)  as a result of a change in federal, state or local law which affects this Policy;
2. when the Company's liability is changed as a result of a change in federal, state, or local law;
3. when the Policyholder or any covered division, subsidiary or affiliated company relocates;
4. when a division, subsidiary, or affiliated company is added to or removed from this Policy;
5. when the number of Insured Employees changes by 25% or more from the number of Insured Employees on the date this Policy took effect or the most recent Rate Guarantee Date expired, if later;
6. when the Employer ceases to be covered by the state Workers' Compensation program or any other program of like intent; or
7. on any premium due date on or after:
   (a)  this Policy's first anniversary; or
   (b)  any later Rate Guarantee Date agreed upon by the Company.

Unless the Company and the Group Policyholder agree otherwise, the Company will give at least 31 days' advance written notice of any increase in premium rates.

**MONTHLY PREMIUM AMOUNT.**  The amount of monthly premium due on each due date will be the Total Covered Payroll multiplied by the premium rate.  Changes will not be pro-rated daily.  Instead, premium will be adjusted as follows.
1. When an Insured Employee's insurance (or increased amount of insurance) takes effect, premium will be charged from the monthly due date coinciding with or next following that change.
2. When all or part of an Insured Employee's insurance terminates, the applicable premium will cease on the monthly due date coinciding with or next following that termination.
3. When premiums are paid other than monthly, increases or decreases will result in an adjustment from the premium due date coinciding with or next following that change.

The above manner of charging premium is for accounting purposes only.  It will not extend insurance coverage beyond a date it would have otherwise terminated.

Each premium payment will include any adjustments in past premiums, which are needed due to changes that have not yet been taken into account.  If a premium adjustment involves a return of unearned premium, the amount of the return will be limited to the prior 12-month period.

**GRACE PERIOD.**  A Grace Period of 31 days from the due date will be allowed for the payment of each premium after the first.  This Policy will remain in effect during the Grace Period.  The Policyholder will be liable to the Company for the payment of all premiums due for the period this Policy remains in effect, however.

**WAIVER OF PREMIUM.**  Premium will be administered as follows during any period for which benefits are payable.
1. Long Term Disability premium payments are waived for an Insured Employee who is Disabled, during any period for which benefits are payable.
2. If coverage is to be continued following a period during which premiums were waived; then premium payments must be resumed, as they become due.

GL3001-LTD-11 98

01/01/00

## TOTAL DISABILITY MONTHLY BENEFIT

**BENEFIT.** The Company will pay a Total Disability Monthly Benefit to an Insured Employee, after the completion of the Elimination Period; if he or she:
1.   is Totally Disabled;
2.   is under the regular care of a Physician; and
3.   at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.

The Total Disability Monthly Benefit will cease on the earliest of:
1.   the date the Insured Employee ceases to be Totally Disabled or dies;
2.   the date the Maximum Benefit Period ends;
3.   the date the Insured Employee is able, but chooses not to engage in Partial Disability Employment:
    (a)   in his or her regular occupation, during the Own Occupation Period; or
    (b)   in any gainful occupation, after the Own Occupation Period;
4.   the date the Insured Employee fails to take a required medical exam, without good cause; or
5.   the 60th day after the Company mails a request for additional proof, if not given.

**AMOUNT.** The amount of the Total Disability Monthly Benefit equals:
1.   the Insured Employee's Basic Monthly Earnings multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
2.   Other Income Benefits.

The amount of the Total Disability Monthly Benefit will not be less than the Minimum Monthly Benefit. The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit and Maximum Benefit Period are shown in the Schedule of Benefits.

DEFINITION

**"Total Disability" or "Totally Disabled"** will be defined as follows.
1.   During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of his or her regular occupation.
2.   After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of any gainful occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

## PARTIAL DISABILITY MONTHLY BENEFIT

BENEFIT.   The Company will pay a Partial Disability Monthly Benefit to an Insured Employee, after completion of the Elimination Period; if he or she:
1.    is Disabled;
2.    is engaged in Partial Disability Employment;
3.    is earning at least 20% of Predisability Income when Partial Disability Employment begins;
4.    is under the regular care of a Physician; and
5.    at his or her own expense, submits proof of continued Partial Disability, Physician's care and reduced earnings to the Company upon request.

The Insured Employee does not have to be Totally Disabled prior to receiving Partial Disability Monthly Benefits.   The Elimination Period may be satisfied by days of Total Disability, Partial Disability or any combination thereof.

The Partial Disability Monthly Benefit will cease on the earliest of:
1.    the date the Insured Employee ceases to be Partially Disabled or dies;
2.    the date the Maximum Benefit Period ends;
3.    the date the Insured Employee earns more than:
    (a)    99% of Predisability Income, until Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability; or
    (b)    85% of Predisability Income, after Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability;*
4.    the date the Insured Employee is able, but chooses not to work full-time:
    (a)    in his or her regular occupation, during the Own Occupation Period; or
    (b)    in any gainful occupation, after the Own Occupation Period;
5.    the date the Insured Employee fails to take a required medical exam, without good cause; or
6.    the 60th day after the Company mails a request for additional proof, if not given.

*If the Insured Employee's earnings from Partial Disability Employment fluctuate, the Company has the option to average the most recent three months' earnings and continue the claim; provided that average does not exceed the percentage of Predisability Income allowed above.   A Monthly Benefit will not be payable for any month during which earnings exceeded that percentage, however.

## DEFINITIONS

**"Full-Time"** means the average number of hours the Insured Employee was regularly scheduled to work, at his or her regular occupation, during the month just prior to:
1.    the date the Elimination Period begins; or
2.    the date an approved leave of absence begins, if the Elimination Period begins while the Insured Employee is continuing coverage during a leave of absence.

**"Partially Disabled"** or **"Partial Disability"** will be defined as follows.
1.    During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
    (a)    is unable to perform one or more of the main duties of his or her regular occupation, or is unable to perform such duties full-time; and
    (b)    is engaged in Partial Disability Employment.
2.    After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
    (a)    is unable to perform one or more of the main duties of any gainful occupation which his or her training, education or experience will reasonably allow; or is unable to perform such duties full-time; and
    (b)    is engaged in Partial Disability Employment.

# PARTIAL DISABILITY MONTHLY BENEFIT
## (Continued)

BENEFIT AMOUNT. The Partial Disability Monthly Benefit will replace the Insured Employee's Lost Income; provided it does not exceed the Total Disability Monthly Benefit, which would otherwise be payable during Total Disability without the Partial Disability Employment.

Thus, the amount of the Partial Disability Monthly Benefit will equal the lesser of A or B below.

A.   LOST INCOME:   The Insured Employee's Predisability Income, minus all Other Income Benefits (including earnings from Partial Disability Employment).

B.   TOTAL DISABILITY MONTHLY BENEFIT otherwise payable:
1.   The Insured Employee's Predisability Income multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
2.   Other Income Benefits, except for earnings from Partial Disability Employment.

The Partial Disability Monthly Benefit will never be less than the Minimum Monthly Benefit. The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit, and Maximum Benefit Period are shown in the Schedule of Benefits.

Progressive Calculation

# OTHER INCOME BENEFITS

OTHER INCOME BENEFITS means those benefits shown below:

1.  Any temporary or permanent benefits or awards for which the Insured Employee is eligible under:
    (a)  Worker's or Workmen's Compensation Law;
    (b)  occupational disease law; or
    (c)  any other act or law of like intent.
2.  Any disability income benefits for which the Insured Employee is eligible under any compulsory benefit act or law.
3.  Any disability income benefits for which the Insured Employee is eligible under:
    (a)  any other group plan, sick leave or salary continuance plan of the Employer; or
    (b)  any governmental retirement system as a result of the Insured Employee's job with the Employer.
4.  Any Disability Benefits or Retirement Benefits the Insured Employee receives under a Retirement Plan.
5.  Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan or any similar plan or act as follows:
    (a)  disability or unreduced retirement benefits for which the Insured Employee and any spouse or child is eligible, because of the Insured Employee's Disability or eligibility for unreduced retirement benefits; or
    (b)  reduced retirement benefits received by the Insured Employee and any spouse or child because of the Insured Employee's receipt of reduced retirement benefits.
6.  Earnings the Insured Employee earns or receives from any form of employment.

These Other Income Benefits, except Retirement Benefits, are benefits resulting from the same Disability for which a Monthly Benefit is payable under this Policy.

An Insured Employee who may be entitled to some Other Income Benefit is required to actively pursue it; if he or she does not, Policy benefits may be denied or suspended.

COST-OF-LIVING FREEZE. After the first deduction for each of the Other Income Benefits, the Monthly Benefit will not be further reduced due to any cost-of-living increases payable under these Other Income Benefits.

LUMP SUM PAYMENTS. Other Income Benefits which are paid in a lump sum will be prorated on a monthly basis over the time period for which the sum is given. If no time period is stated, the sum will be prorated on a monthly basis over the time the Company expects the Insured Employee to live.

ESTIMATED PAYMENTS. When the Insured Employee may qualify for certain Other Income Benefits, the Company may estimate the amount of such benefits. The Company may reduce the Insured Employee's Monthly Benefits by such estimated amounts, which:

1.  have not yet been awarded or denied; or
2.  have been denied, if the denial is being appealed.

If an Insured Employee's Monthly Benefits have been reduced by an estimated amount; then such payments will be adjusted when the Company receives proof:

1.  of the amount actually awarded; or
2.  that benefits have been denied, and that any appeal the Company deems necessary has been completed. (In that event, a lump sum will be refunded to the Insured Employee.)

## RECURRENT DISABILITY

"Recurrent Disability" means a Disability due to an Injury or Sickness which is the same as, or related to, the cause of a prior Disability for which Monthly Benefits were payable.  A Recurrent Disability will be treated as follows.

1. A Recurrent Disability will be treated as a new period of Disability, and a new Elimination Period must be completed before further Monthly Benefits are payable; if the Insured Employee returns to his or her regular occupation on a full-time basis for six months or more.

2. A Recurrent Disability will be treated as part of the prior Disability, if an Insured Employee returns to his or her regular occupation on a full-time basis for less than six months.

To qualify for a Monthly Benefit, the Insured Employee must earn less than the percentage of Predisability Income specified in the Partial Disability Monthly Benefit section.  Monthly Benefit payments will be subject to all other terms of this Policy for the prior Disability.

If an Insured Employee becomes eligible for coverage under any other group Long Term Disability policy, this Recurrent Disability provision will cease to apply to that Insured Employee.

GL3001-LTD-15 98

01/01/00

# VOLUNTARY VOCATIONAL REHABILITATION BENEFIT PROVISION

**BENEFIT.** If an Insured Employee is Disabled and is receiving Policy benefits; then he or she may be eligible for a Vocational Rehabilitation Benefit. This Benefit consists of services which may include:
1.  vocational evaluation, counseling, training or job placement;
2.  job modification or special equipment; and
3.  other services which the Company deems reasonably necessary to help the Insured Employee return to work.

The Company will determine the Insured Employee's eligibility and the amount of any Benefit payable.

**ELIGIBILITY.** An Insured Employee may be eligible for this Benefit, if the Company finds that he or she:
1.  has a Disability that prevents the performance of his or her regular occupation; and, after the Own Occupation Period, also lacks the skills, training or experience needed to perform any other gainful occupation;
2.  has the physical and mental abilities needed to complete a Program; and
3.  is reasonably expected to return to work after completing the Program; in view of his or her degree of motivation and the labor force demand for workers in the proposed occupation.

The Company must also find that the cost of the proposed services is less than its expected claim liability.

**AMOUNT.** The amount of any Vocational Rehabilitation Benefit will not exceed the Company's expected claims liability. This benefit will not be payable for services covered under the Insured Employee's health care plan or any other vocational rehabilitation program. Payment may be made to the provider of the services, at the Company's option.

**CONDITIONS.** Either the Company, the Insured Employee, or his or her Physician may first propose vocational rehabilitation. When a Program is approved by the Company, this Policy's definition of "Disability" will be waived during the rehabilitation period; but it will be reapplied after the Program ends. The Company will determine the amount and duration of any Long Term Disability benefits payable after the Program ends.

**LIMITATION.** This Policy will not cover any period of Disability for an Insured Employee who has received a Vocational Rehabilitation Benefit and has failed to complete the Program, without Good Cause.

## DEFINITIONS

**"Good Cause"**, as used in this provision, means the Insured Employee's:
1.  documented physical or mental impairments, which render the Insured Employee unable to take part in or complete a Program;
2.  involvement in a medical program, which prevents or interferes with the Insured Employee's taking part in or completing a Program; or
3.  participating in good faith in some other vocational rehabilitation program, which:
    (a)  conflicts with taking part in or completing a Program developed by the Company; and
    (b)  is reasonably expected to return the Insured Employee to work.

**"Program"** means a written vocational rehabilitation program:
1.  which the Company develops with input from the Insured Employee; his or her Physician; and any current or prospective employer, when appropriate; and
2.  which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

# REASONABLE ACCOMMODATION BENEFIT

If an Insured Employee of the Employer is Disabled, and is receiving Policy benefits; then the Employer may be eligible for a Reasonable Accommodation Benefit. This Benefit reimburses the Employer for 50% of the expense incurred for reasonable accommodation services for the Insured Employee; but will not exceed:

1.  a maximum benefit of $5,000 for any one Insured Employee; or
2.  the Company's expected liability for the Insured Employee's Long Term Disability claim (whichever is less).

Such services may include:

1.  providing the Insured Employee a more accessible parking space or entrance;
2.  removing barriers or hazards to the Insured Employee from the worksite;
3.  special seating, furniture or equipment for the Insured Employee's work station;
4.  providing special training materials or translation services during the Insured Employee's training; and
5.  other services the Company deems reasonably necessary to help the Insured Employee return to work with the Employer.

ELIGIBILITY FOR BENEFIT. The Company will determine the Employer's eligibility to receive the Benefit. To qualify for the Benefit, the Employer must have an Insured Employee:

(a)  whose Disability prevents the performance of his or her regular occupation at the Employer's worksite;
(b)  who has the physical and mental abilities needed to perform his or her own or another occupation at the Employer's worksite; but only with the help of the proposed accommodation; and
(c)  who is reasonably expected to return to work with the help of the proposed accommodation.

The Company must also find that the requested Reasonable Accommodation Benefit is less than the expected liability for the Insured Employee's Long Term Disability claim.

WRITTEN PROPOSAL. The reasonable accommodation services must be provided in accord with a written proposal, which is developed with input from:

1.  the Employer;
2.  the Insured Employee; and
3.  his or her Physician, when appropriate.

The proposal must state the purpose of the proposed accommodation; and the times, dates and costs of the services.

CONDITIONS. Either the Company, the Employer, the Insured Employee, or his or her Physician may first propose an accommodation.

The proposal must be approved by the Company in writing.

The Company will then reimburse the Employer, upon receipt of proof that the Employer:

1.  has provided the services for the Insured Employee; and
2.  has paid the provider for the services.

GL3001-LTD-17.3

26

## PRIOR INSURANCE CREDIT UPON TRANSFER OF INSURANCE CARRIERS

To prevent loss of coverage for an Employee because of a transfer of insurance carriers, this Policy will provide Prior Insurance Credit for employees insured under the prior carrier's policy on its termination date as follows.

**FAILURE TO BE ACTIVELY-AT-WORK DUE TO INJURY OR SICKNESS.**  Subject to premium payments, this Policy will provide coverage to an Employee:

1.  who was insured by the prior carrier's policy at the time of transfer; and
2.  who was not Actively-At-Work due to Injury or Sickness on this Policy's Effective Date.

The coverage will be that provided by the prior carrier's policy, had it remained in force.  The Company will pay:

1.  the benefit that the prior carrier would have paid; minus
2.  any amount for which the prior carrier is liable.

**DISABILITY DUE TO A PRE-EXISTING CONDITION.**  Benefits may be payable for a Total Disability due to a Pre-Existing Condition for an Employee who:

1.  was insured by the prior carrier's policy at the time of transfer; and
2.  was Actively-At-Work and insured under this Policy on the Policy's Effective Date.

The benefits will be determined as follows:

1.  The Company will apply this Policy's Pre-Existing Condition Exclusion.  If the Insured Employee qualifies for benefits, such Insured Employee will be paid according to this Policy's benefit schedule.
2.  If the Insured Employee cannot satisfy this Policy's Pre-Existing Condition Exclusion, the prior carrier's pre-existing condition exclusion will be applied as follows:
    a.  If the Insured Employee satisfies the prior carrier's pre-existing condition exclusion, giving consideration towards continuous time insured under both policies, such Insured Employee will be paid according to the prior carrier's benefit schedule.
    b.  If the Insured Employee cannot satisfy the Pre-Existing Condition Exclusion of this Policy or that of the prior carrier, no benefit will be paid.

Prior Insurance Credit

GL3001-LTD-18

01/01/00

## MERGER ENDORSEMENT

This endorsement attaches to and forms a part of your Guarantee Life Insurance Company policy, contract or certificate.

Effective August 1, 2000, Guarantee Life Insurance Company is merged into Jefferson Pilot Financial Insurance Company and the surviving company is Jefferson Pilot Financial Insurance Company.

The policy, contract or certificate to which this endorsement is attached is amended by changing all references to "Guarantee Life Insurance Company" to "Jefferson Pilot Financial Insurance Company".

The Home Office of Jefferson Pilot Financial Insurance Company is:          8801 Indian Hills Drive
                                                                           Omaha, NE  68114

All servicing and terms of your policy, contract or certificate remain the same.

The effective date of this endorsement is August 1, 2000.

Signed for Jefferson Pilot Financial Insurance Company


Chief Executive Officer                                    Secretary


GL-MERGEND



# GUARANTEE LIFE INSURANCE COMPANY

Guarantee Centre  8801 Indian Hills Drive  Omaha, NE 68114-4066  402-361-7300

CERTIFIES THAT Group Policy No.        GL 000010024539        has been issued to
Curtain Factory Outlet, Inc.
(The Group Policyholder)

The Issue Date of the Policy is January 1, 2000.

The insurance is effective only if the Employee is eligible for insurance and becomes and remains insured as provided in the Group Policy.

Certificate of Insurance for Class 2

The Employee is entitled to benefits described in this Certificate if the Employee is eligible for insurance under the provisions of the Policy and according to the records of the Employer.

This Certificate replaces any other certificate previously issued for the benefits described inside.  As a Certificate of insurance, this does not constitute a contract of insurance, it summarizes the provisions of the Policy and is subject to the terms of the Policy.

President

## CERTIFICATE OF GROUP LTD INSURANCE

GL3002-LTD-CERT

PBOWERS        1898806 300

Face Page
01/01/00

Curtain Factory Outlet, Inc.
000010024539

## SCHEDULE OF BENEFITS

ELIGIBLE CLASS means:  Class 2     All Other Full-Time Employees

WAITING PERIOD:     One year of continuous Active Work     (For date insurance begins, refer to "Effective Dates" section)

MINIMUM HOURS PER WEEK: 30

BENEFIT PERCENTAGE:   60%

MAXIMUM MONTHLY BENEFIT:   $6,000

MINIMUM MONTHLY BENEFIT:   $50

Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD: 90 days of Disability due to the same or a related Sickness or Injury, which must be accumulated within a 180 day period.

MAXIMUM BENEFIT PERIOD (For Sickness or Injury):   The Insured Person's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

GL3002-CERT-SB

01/01/00

# TABLE OF CONTENTS

Definitions.................................................................................3

General Provisions .....................................................................8

Claims Procedures ....................................................................9

Eligibility ...............................................................................11

Effective Dates ........................................................................11

Individual Termination ...........................................................13

Total Disability Monthly Benefit.............................................15

Partial Disability Monthly Benefit ...........................................16

Other Income Benefits.............................................................18

Recurrent Disability................................................................19

Exclusions ..............................................................................20

Specified Injuries or Sicknesses Limitation..............................21

Voluntary Vocational Rehabilitation Benefit Provision.............22

Reasonable Accommodation Benefit.........................................23

Prior Insurance Credit Upon Transfer of Insurance Carriers ............................24

Family Income Benefit .............................................................25

GL3002-CERT-TOC

01/01/00

## DEFINITIONS
### (continued)

**DAY** or **DATE** means the period of time which begins at 12:01 a.m. and ends at 12:00 midnight, standard time, at the Policyholder's place of business. When used with regard to effective dates, it means 12:01 a.m. When used with regard to termination dates, it means 12:00 midnight.

**DISABLED** or **DISABILITY** means Totally Disabled and/or Partially Disabled.

**DISABILITY BENEFIT** when used with the term Retirement Plan, means a benefit which:
1. is payable under a Retirement Plan due to disability as defined in that plan; and
2. does not reduce the benefits which would have been paid as Retirement Benefits at the normal retirement age under the plan if the disability had not occurred.

If the payment of the benefit does cause such a reduction, the benefit will be deemed a Retirement Benefit as defined in this Certificate.

**ELIGIBILITY WAITING PERIOD** means the period of time that:
1. begins with an Employee's most recent date of employment with the Employer; and
2. ends on the day prior to the day such Employee is eligible for coverage under the Policy.

**ELIMINATION PERIOD** means the number of days of Disability during which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits. It applies as follows.
1. The Elimination Period:
   (a) begins on the first day of Disability; and
   (b) is satisfied when the required number of days is accumulated within a period which does not exceed two times the Elimination Period.
   During a period of Disability, the Insured Employee may return to full-time work, at his or her own or any other occupation, for an accumulated number of days not to exceed the Elimination Period.
2. Only days of Disability due to the same or a related Sickness or Injury will count towards the Elimination Period. Days on which the Insured Employee returns to full-time work will not count towards the Elimination Period.

**EMPLOYEE** means a person:
1. whose employment with the Employer is:
   (a) on a regular full-time basis;
   (b) the person's principal occupation; and
   (c) for regular wage or salary;
2. who is regularly scheduled to work at such occupation at least the minimum number of hours shown in the Schedule of Benefits; and
3. who is a member of an Eligible Class which is eligible for coverage under the Policy;
4. who is not a temporary or seasonal employee; and
5. who is a citizen of the United States or legally works in the United States.

**EMPLOYER** means the Policyholder and includes any division, subsidiary or affiliated company named in the Application.

**EVIDENCE OF INSURABILITY** means a statement of proof of an Employee's medical history. The Company uses this to determine his or her acceptance for insurance, or for an increased amount of insurance. Such proof will be provided at the Employee's own expense.

## DEFINITIONS
### (continued)

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job duties which:
1. are normally required to perform the Insured Person's regular occupation; and
2. cannot reasonably be modified or omitted.

It includes those main duties as performed in the national workforce; **not** as performed for a certain firm or at a certain work site.

**MEDICALLY APPROPRIATE TREATMENT** means diagnostic services, consultation, care or services which are consistent with the symptoms or diagnosis causing the Insured Employee's Disability. Such treatment must be rendered:
1. by a Physician whose license and any specialty are consistent with the disabling condition; and
2. according to generally accepted, professionally recognized standards of medical practice.

**MONTHLY BENEFIT** means the amount payable monthly by the Company to the Insured Employee who is Totally or Partially Disabled.

**OWN OCCUPATION PERIOD** means a period as shown in the Schedule of Benefits.

**PARTIALLY DISABLED** or **PARTIAL DISABILITY** shall be as defined in the Partial Disability Monthly Benefit sections.

**PARTIAL DISABILITY EMPLOYMENT** means the Insured Employee is working at his or her own or any other occupation; but because of a Partial Disability:
1. the Insured Employee's hours or production is reduced;
2. one or more main duties of the job are reassigned; or
3. the Insured Employee is working in a lower-paid occupation.

His or her current earnings must be at least 20% of Predisability Income, and may not exceed the percentage specified in the Partial Disability Benefit section.

**PHYSICIAN** means:
1. a legally qualified medical doctor who is licensed to practice medicine, to prescribe and administer drugs or to perform surgery; or
2. any other duly licensed medical practitioner who is deemed by state law to be the same as a legally qualified medical doctor.

The medical doctor or other medical practitioner must be acting within the scope of his or her license; and must be qualified to provide medically appropriate treatment for the Insured Employee's disabling condition.

Physician does **not** include the Insured Employee or a relative of the Insured Employee receiving treatment. (Relatives include the Insured Employee's spouse, siblings, parents, children and grandparents; and his or her spouse's relatives of like degree.)

**POLICY** means the Group Long Term Disability Insurance Policy issued by the Company to the Policyholder.

**POLICYHOLDER** means the person, individual, firm, trust or other organization as shown on the Face Page of this Certificate.

**PREDISABILITY INCOME** - See Basic Monthly Earnings.

## GENERAL PROVISIONS

INCONTESTABILITY. Except for the non-payment of premiums or fraud, the Company may not contest the validity of the Policy as to any Insured Employee, after it has been in force for two years during his or her lifetime.

RESCISSION. The Company has the right to rescind any insurance for which evidence of insurability was required, if:
1.    an Insured Employee incurs a claim during the first two years of coverage; and
2.    the Company discovers that the Insured Employee made a material misrepresentation on his or her enrollment form.

A material misrepresentation is an incomplete or untrue statement that caused the Company to issue coverage which it would have disapproved, had it known the truth. To rescind means to cancel insurance back to its effective date. In that event, the Company will refund all premium paid for the rescinded insurance, less any benefits paid for the Insured Employee's Disability. The Company reserves the right to recover any claims paid in excess of such premiums.

MISSTATEMENTS OF FACTS. If relevant facts about any person were misstated:
1.    a fair adjustment of the premium will be made; and
2.    the true facts will decide if and in what amount insurance is valid under the Policy.

If an Insured Employee's age has been misstated; then any benefits shall be in the amount the paid premium would have purchased at the correct age.

POLICYHOLDER'S AGENCY. For all purposes of the Policy, the Policyholder acts on its own behalf or as Agent of the Employee. Under no circumstances will the Policyholder be deemed the Agent of the Company.

COMPANY'S DISCRETIONARY AUTHORITY. Except for those functions which the Policy specifically reserves to the Policyholder or Employer, the Company has sole authority to manage the Policy, to administer claims, to interpret Policy provisions, and to resolve questions arising under the Policy. The Company's authority includes (but is not limited to) the right to:
1.    establish and enforce procedures for administering the Policy and claims under it;
2.    determine Employees' eligibility for insurance and entitlement to benefits;
3.    determine what information the Company reasonably requires to make such decisions; and
4.    resolve all matters when a claim review is requested.

Any decision the Company makes in the exercise of its authority shall be conclusive and binding.

ASSIGNMENT. The rights and benefits under this Certificate may not be assigned.

# CLAIMS PROCEDURES

**NOTICE OF CLAIM.** Written notice of claim must be given during the Elimination Period. The notice must be sent to the Company's Home Office. It should include:
1. the Insured Employee's name and address; and
2. the number of the Policy.

If this is not possible, written notice must be given as soon as it is reasonably possible.

**CLAIM FORMS.** When notice of claim is received, the Company will send claim forms to the Insured Employee. If the Company does not send the forms within 15 days; then the Insured Employee may send the Company written proof of Disability in a letter stating the date the Disability started, its cause and degree. The Company will periodically send the Insured Employee additional Claim Forms.

**PROOF OF CLAIM.** The Company must be given written proof of claim within 90 days after the end of the Elimination Period. If it was not reasonably possible to give written proof in the time required, the claim will not be reduced or denied solely for this reason; provided the proof is filed as soon as reasonably possible. In any event, proof of claim must be given no later than one year from such time. These time limits will not apply while an Insured Employee lacks legal capacity, however.

Proof of claim must be provided at the Insured Employee's own expense. It must show the date the Disability started, its cause and degree. It must show any restrictions on performing the duties of the Insured Employee's regular occupation. Documentation must include:
1. completed statements by the Insured Employee, the Employer and the attending Physician;
2. a signed authorization for the Company to obtain more information; and
3. any other items the Company may reasonably require in support of the claim.

Proof of continued Disability and regular attendance of a Physician must be given to the Company, within 60 days after the Company requests it; if it is not, benefits may be denied or suspended.

**EXAM OR AUTOPSY.** At anytime while a claim is pending, the Company may:
1. have the Insured Employee examined by a Physician, specialist or vocational rehabilitation expert of the Company's choice, as often as reasonably required; and
2. deny or suspend benefits for an Insured Employee who fails to attend an exam, without good cause; or who fails to cooperate with the examiner.

The Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS.** When the Company receives proof of claim, benefits payable under the Policy will be paid as follows.
1. Any Long Term Disability benefits will be paid monthly, during any period for which the Company is liable. If benefits are due for less than a month, they will be paid on a prorata basis. The daily rate will equal 1/30 of the monthly benefit.
2. Any balance which remains unpaid at the end of the period of liability will be paid immediately upon receipt of due written proof.

**TO WHOM PAYABLE.** All benefits are payable to the Insured Employee; except after his or her death benefits will be payable as follows.
1. Any Survivor Benefit will be payable in accord with that Policy provision.
2. Any other benefits will be payable to the Insured Employee's estate.

When a benefit becomes payable to the Insured Employee's estate, a minor or any other person who is not legally competent to give a valid receipt; then up to $2,000 may be paid to any relative of the Insured Employee that the Company finds entitled to payment. If payment is made in good faith to such a relative, the Company will not have to pay that benefit again.

**NOTICE OF CLAIM DECISION.** Within a reasonable time after receiving proof of loss, the Company will send the Insured Employee a written notice of their claim decision. If the Company denies any part of the claim, the written notice will:
1. explain the reason for the denial under the terms of the Policy; and
2. inform the Insured Employee of the right to a review of the Company's decision.

If the Insured Employee does not receive a written decision within 90 days after the Company receives his or her claim; then the Insured Employee has a right to an immediate review, as if the claim was denied.

## CLAIMS PROCEDURES
### (continued)

REVIEW PROCEDURE.  Within 60 days after receiving a denial notice, the Insured Employee may request a claim review by sending the Company a written request, along with any written comments or other items to support the claim.  The Insured Employee may review certain non-privileged information relating to the request for review.

The Company will review the claim and send the Insured Employee a written notice of their decision within 60 days after receiving the request for review; or within 120 days, if special circumstances require an extension.  The notice will state the reasons for the Company's decision under the terms of the Policy.

RIGHT OF RECOVERY.  If benefits have been overpaid on any claim, full reimbursement to the Company is required within 60 days.  If reimbursement is not made, the Company has the right to:
1.  reduce future benefits until full reimbursement is made; and
2.  recover such overpayments from the Insured Employee or his or her estate.

Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, the Insured Employee's receipt of Other Income Benefits, or any other reason.

LEGAL ACTIONS.  No legal action to recover any benefits may be brought until sixty days after the required written proof of claim has been given.  No legal action may be brought more than three years after written proof of claim is required to be given.

GL3002-CERT-6 98

01/01/00

# ELIGIBILITY

**ELIGIBLE CLASSES.** The classes of Employees eligible for insurance are shown in the Schedule of Benefits. The Company has the right to review and terminate any or all classes eligible under the Policy, if any class ceases to be covered by the Policy.

**ELIGIBILITY DATE.** An Employee becomes eligible for coverage provided by the Policy on the later of:
1. the Policy's effective date; or
2. the date the Employee satisfies the Waiting Period.

Prior service in an Eligible Class will apply toward the Waiting Period, when:
1. a former Employee is rehired within one year after his or her employment ends; or
2. an Employee returns from a Family or Medical Leave within the leave period required by federal or state law (whichever is greater).

# EFFECTIVE DATES

**EFFECTIVE DATE.** Except as stated in the Delayed Effective Date provision, coverage for an Employee becomes effective at 12:01 a.m. on the latest of:
1. the first day of the Insurance Month coinciding with or next following the date the Employee becomes eligible for coverage;
2. the date the Employee makes written application for coverage; and signs:
   (a) a payroll deduction order, if the Employees pay any part of the Policy premiums; or
   (b) an order to pay premiums from the Employee's Flexible Benefits Plan account, if premiums are paid through such an account; or
3. the date the Company approves the Employee's evidence of insurability, if required.

Evidence of insurability satisfactory to the Company must be submitted (at the Employee's expense) if:
1. written application for coverage (or an increased amount of coverage) is made more than 31 days after the Employee becomes eligible for such coverage;
2. coverage is elected after the Employee has requested:
   (a) to terminate the insurance;
   (b) to stop payroll deductions for the insurance; or
   (c) to stop premium payments through a Flexible Benefits Plan account;
3. coverage is elected after the Employee has caused insurance to lapse by failing to pay the required premium when due; or
4. optional, supplemental, voluntary or Buy-Up Benefit coverage is elected in excess of any guaranteed issue amounts shown in the Schedule of Benefits.

**DELAYED EFFECTIVE DATE.** An Employee's Effective Date of any initial, increased or additional coverage will be delayed; if such Employee is not Actively-at-Work on the date that coverage would otherwise be effective. Coverage will take effect on the Employee's second consecutive day of Active Work.

**EFFECTIVE DATE FOR CHANGE IN ELIGIBLE CLASS.** An Insured Employee may become a member of a different Eligible Class. Except as stated in the Delayed Effective Date provision, coverage under the different Eligible Class will be effective:
1. immediately, if the different Eligible Class involves any reduction in coverage; or
2. the first day of the month after the Insured Employee has been Actively-at-Work for at least 15 days, as a member of a different Eligible Class; if the different Eligible Class involves enhancement of any coverage.

GL3002-CERT-7 94

01/01/00

**REINSTATEMENT AFTER FAMILY OR MEDICAL LEAVE.**  A new Waiting Period and evidence of insurability will be waived for an Employee, upon return from an approved Family or Medical Leave, provided:

1. the Employee returns within the leave period required by federal or state law (whichever is greater);
2. the Employee applies for insurance or is enrolled under the Policy within 31 days after resuming Active Work; and
3. the reinstated amount of insurance does not exceed the amount which terminated.

If the above conditions are met, the months of leave will count towards any unmet Pre-Existing Condition Exclusion period; and a new Pre-Existing Condition Exclusion will not apply to the reinstated amount of insurance.  A new Pre-Existing Condition Exclusion will apply to any increased amount of insurance, however.

## INDIVIDUAL TERMINATION

**INDIVIDUAL TERMINATION OF COVERAGE.** An Insured Employee's coverage will terminate at 12:00 midnight on the earliest of:

1. the date the Policy or the Employer's participation terminates; but without prejudice to any claim incurred prior to termination;
2. the date the Insured Employee's Class is no longer eligible for insurance;
3. the date such Insured Employee ceases to be a member of an Eligible Class;
4. the end of the period for which the last required premium has been paid; or
5. the date on which the Insured Employee's employment with the Employer terminates; unless coverage is continued as provided below.

**CONTINUATION.** Ceasing Active Work is deemed termination of employment; but insurance may be continued as follows.

1. **Ceasing Active Work.** If the Insured Employee ceases Active Work, and does not become eligible for similar group disability income coverage within 31 days after employment ends; then coverage may be continued:
   (a) for 31 days;
   (b) provided the Company receives the required premium from the Employer.

2. **Disability.** If an Insured Employee is absent due to Total Disability, or is engaged in Partial Disability Employment; then Long Term Disability insurance may be continued during:
   (a) the Elimination Period; provided the Company receives the required premium from the Employer; and
   (b) the period for which Long Term Disability benefits are payable, without payment of premium.

3. **Family or Medical Leave.** If an Insured Employee goes on an approved Family or Medical Leave, and is not entitled to continue insurance due to Disability, as provided above; then Long Term Disability insurance may be continued, until the earliest of:
   (a) the end of the leave period approved by the Employer;
   (b) the end of the leave period required by federal or state law (whichever is greater);
   (c) the date the Insured Employee notifies the Employer that he or she will not return; or
   (d) the date the Insured Employee begins employment with another employer;
   provided the Company receives the required premium from the Employer.

4. **Lay-off or Other Leave.** When an Insured Employee goes on a temporary lay-off, or an approved leave of absence which is not subject to the federal Family and Medical Leave Act (or any similar state law); then Long Term Disability insurance may be continued:
   (a) until the end of the calendar month following the month in which the lay-off or leave began;
   (b) provided the Company receives the required premium from the Employer.

5. **Plant Closing.** When an Insured Employee ceases Active Work due to a plant closing or partial closing (as defined by Massachusetts law); then insurance may be continued:
   (a) for 90 days after the closing; or
   (b) until he or she becomes eligible for similar group disability income coverage (whichever occurs first);
   provided the Company receives the required premium from the Employer.

When an Insured Employee is entitled to continue coverage in accord with two provisions shown above, he or she may elect the longer continuation period (but not both).

The Employer must not act so as to discriminate unfairly among Employees in similar situations. Insurance may not be continued when an Insured Employee ceases Active Work due to a labor dispute, strike, work slowdown or lockout.

**INDIVIDUAL TERMINATION DURING DISABILITY.** Termination of an Insured Employee's coverage during a Disability will have no effect on benefits payable for that period of Disability.

GL3002-CERT-8 98 MA

01/01/00

GL3002-CERT-8 98 MA

01/01/00

## PARTIAL DISABILITY MONTHLY BENEFIT

BENEFIT.   The Company will pay a Partial Disability Monthly Benefit to an Insured Employee, after completion of the Elimination Period; if he or she:
1.    is Disabled;
2.    is engaged in Partial Disability Employment;
3.    is earning at least 20% of Predisability Income when Partial Disability Employment begins;
4.    is under the regular care of a Physician; and
5.    at his or her own expense, submits proof of continued Partial Disability, Physician's care and reduced earnings to the Company upon request.

The Insured Employee does not have to be Totally Disabled prior to receiving Partial Disability Monthly Benefits.   The Elimination Period may be satisfied by days of Total Disability, Partial Disability or any combination thereof.

The Partial Disability Monthly Benefit will cease on the earliest of:
1.    the date the Insured Employee ceases to be Partially Disabled or dies;
2.    the date the Maximum Benefit Period ends;
3.    the date the Insured Employee earns more than:
   (a)    99% of Predisability Income, until Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability; or
   (b)    85% of Predisability Income, after Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability;*
4.    the date the Insured Employee is able, but chooses not to work full-time:
   (a)    in his or her regular occupation, during the Own Occupation Period; or
   (b)    in any gainful occupation, after the Own Occupation Period;
5.    the date the Insured Employee fails to take a required medical exam, without good cause; or
6.    the 60th day after the Company mails a request for additional proof, if not given.

*If the Insured Employee's earnings from Partial Disability Employment fluctuate, the Company has the option to average the most recent three months' earnings and continue the claim; provided that average does not exceed the percentage of Predisability Income allowed above.   A Monthly Benefit will not be payable for any month during which earnings exceeded that percentage, however.

DEFINITIONS

**"Full-Time"** means the average number of hours the Insured Employee was regularly scheduled to work, at his or her regular occupation, during the month just prior to:
1.    the date the Elimination Period begins; or
2.    the date an approved leave of absence begins, if the Elimination Period begins while the Insured Employee is continuing coverage during a leave of absence.

**"Partially Disabled"** or **"Partial Disability"** will be defined as follows.
1.    During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
   (a)    is unable to perform one or more of the main duties of his or her regular occupation, or is unable to perform such duties full-time; and
   (b)    is engaged in Partial Disability Employment.
2.    After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
   (a)    is unable to perform one or more of the main duties of any gainful occupation which his or her training, education or experience will reasonably allow; or is unable to perform such duties full-time; and
   (b)    is engaged in Partial Disability Employment.

## PARTIAL DISABILITY MONTHLY BENEFIT
### (Continued)

BENEFIT AMOUNT.  The Partial Disability Monthly Benefit will replace the Insured Employee's Lost Income; provided it does not exceed the Total Disability Monthly Benefit, which would otherwise be payable during Total Disability without the Partial Disability Employment.

Thus, the amount of the Partial Disability Monthly Benefit will equal the lesser of A or B below.

    A.    LOST INCOME:  The Insured Employee's Predisability Income, minus all Other Income Benefits (including earnings from Partial Disability Employment).

    B.    TOTAL DISABILITY MONTHLY BENEFIT otherwise payable:
        1.    The Insured Employee's Predisability Income multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
        2.    Other Income Benefits, except for earnings from Partial Disability Employment.

The Partial Disability Monthly Benefit will never be less than the Minimum Monthly Benefit.  The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit, and Maximum Benefit Period are shown in the Schedule of Benefits.

Progressive Calculation

# OTHER INCOME BENEFITS

OTHER INCOME BENEFITS means those benefits shown below:
1. Any temporary or permanent benefits or awards for which the Insured Employee is eligible under:
   (a) Worker's or Workmen's Compensation Law;
   (b) occupational disease law; or
   (c) any other act or law of like intent.
2. Any disability income benefits for which the Insured Employee is eligible under any compulsory benefit act or law.
3. Any disability income benefits for which the Insured Employee is eligible under:
   (a) any other group plan, sick leave or salary continuance plan of the Employer; or
   (b) any governmental retirement system as a result of the Insured Employee's job with the Employer.
4. Any Disability Benefits or Retirement Benefits the Insured Employee receives under a Retirement Plan.
5. Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan or any similar plan or act as follows:
   (a) disability or unreduced retirement benefits for which the Insured Employee and any spouse or child is eligible, because of the Insured Employee's Disability or eligibility for unreduced retirement benefits; or
   (b) reduced retirement benefits received by the Insured Employee and any spouse or child because of the Insured Employee's receipt of reduced retirement benefits.
6. Earnings the Insured Employee earns or receives from any form of employment.

These Other Income Benefits, except Retirement Benefits, are benefits resulting from the same Disability for which a Monthly Benefit is payable under the Policy.

An Insured Employee who may be entitled to some Other Income Benefit is required to actively pursue it; if he or she does not, Policy benefits may be denied or suspended.

COST-OF-LIVING FREEZE. After the first deduction for each of the Other Income Benefits, the Monthly Benefit will not be further reduced due to any cost-of-living increases payable under these Other Income Benefits.

LUMP SUM PAYMENTS. Other Income Benefits which are paid in a lump sum will be prorated on a monthly basis over the time period for which the sum is given. If no time period is stated, the sum will be prorated on a monthly basis over the time the Company expects the Insured Employee to live.

ESTIMATED PAYMENTS. When the Insured Employee may qualify for certain Other Income Benefits, the Company may estimate the amount of such benefits. The Company may reduce the Insured Employee's Monthly Benefits by such estimated amounts, which:
1. have not yet been awarded or denied; or
2. have been denied, if the denial is being appealed.
If an Insured Employee's Monthly Benefits have been reduced by an estimated amount; then such payments will be adjusted when the Company receives proof:
1. of the amount actually awarded; or
2. that benefits have been denied, and that any appeal the Company deems necessary has been completed. (In that event, a lump sum will be refunded to the Insured Employee.)

GL3002-CERT-11 98

18

Full SS Integ.
01/01/00

# RECURRENT DISABILITY

"Recurrent Disability" means a Disability due to an Injury or Sickness which is the same as, or related to, the cause of a prior Disability for which Monthly Benefits were payable. A Recurrent Disability will be treated as follows.

1.  A Recurrent Disability will be treated as a new period of Disability, and a new Elimination Period must be completed before further Monthly Benefits are payable; if the Insured Employee returns to his or her regular occupation on a full-time basis for six months or more.

2.  A Recurrent Disability will be treated as part of the prior Disability, if an Insured Employee returns to his or her regular occupation on a full-time basis for less than six months.

To qualify for a Monthly Benefit, the Insured Employee must earn less than the percentage of Predisability Income specified in the Partial Disability Monthly Benefit section. Monthly Benefit payments will be subject to all other terms of the Policy for the prior Disability.

If an Insured Employee becomes eligible for coverage under any other group Long Term Disability policy, this Recurrent Disability provision will cease to apply to that Insured Employee.

# EXCLUSIONS

GENERAL EXCLUSIONS. The Policy will not cover any period of Total or Partial Disability:
1. due to war, declared or undeclared, or any act of war;
2. due to intentionally self-inflicted injuries;
3. due to active participation in a riot;
4. due to the Insured Employee's committing of or the attempting to commit a felony or any type of assault or battery;
5. during which the Insured Employee is incarcerated for the commission of a felony; or
6. during which the Insured Employee is not under the regular care of a Physician.

PRE-EXISTING CONDITION EXCLUSION. The Policy will not cover any Total or Partial Disability:
1. which is caused or contributed to by, or results from a Pre-Existing Condition; and
2. which begins in the first 12 months after the Insured Employee's Effective Date.

"Pre-Existing Condition" means a Sickness or Injury for which the Insured Employee received treatment within 3 months prior to the Insured Employee's Effective Date.

"Treatment" means consultation, care or services provided by a Physician. It includes diagnostic measures and the prescription, refill of prescription, or taking of any prescribed drugs or medicines.

## SPECIFIED INJURIES OR SICKNESSES LIMITATION

**LIMITATION.** If an Insured Employee is Disabled primarily due to one or more of the Specified Injuries or Sicknesses defined below; then Partial or Total Disability Monthly Benefits:
1. will be payable subject to the terms of the Policy; but
2. will be limited to 24 months for any one period of Disability; unless the Insured Employee is confined to a Hospital.

"Specified Injuries or Sicknesses" include any Mental Sickness, or Substance Abuse, as defined below.

CONDITIONS
1. If the Insured Employee is confined in a Hospital at the end of the 24th month for which Policy benefits are paid for the Specified Injury or Sickness; then benefits will be payable until he or she is discharged from that facility.
2. In no event will the Monthly Benefit be paid beyond the Maximum Benefit Period shown in the Schedule of Insurance, however.

DEFINITIONS

**"Hospital,"** as used in this provision, means:
1. a general hospital which:
   (a) is licensed, approved or certified by the state where it is located;
   (b) is recognized by the Joint Commission on the Accreditation of Hospitals; or
   (c) is operated to treat resident inpatients; has a registered nurse always on duty; and has a lab, x-ray facility and place where major surgery is performed; and
2. a skilled nursing care facility or unit, which provides convalescent or nursing care; and which is recognized as a skilled nursing care facility under Medicare.
The term Hospital also includes:
1. a Mental Hospital when treatment is for a Mental Sickness; and
2. a Treatment Center when treatment is for Substance Abuse.

**"Mental Hospital"** means a health care facility (or its psychiatric unit) which:
1. is licensed, certified or approved as a mental hospital by the state where it is located;
2. is equipped to treat resident inpatients' mental diseases or disorders; and
3. has a resident psychiatrist on duty or on call at all times.

**"Mental Sickness"** means any emotional, behavioral, psychological, personality, adjustment, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome; regardless of its cause. It includes, but is not limited to:
1. schizophrenia or schizoaffective disorder;
2. bipolar affective disorder, manic depression, or other psychosis; and
3. obsessive-compulsive, depressive, panic or anxiety disorders.
These conditions are usually treated by a psychiatrist, a clinical psychologist or other qualified mental health care provider. Treatment usually involves psychotherapy, psychotropic drugs or similar methods of treatment.

Mental Sickness does **not** include irreversible dementia resulting from:
1. stroke, trauma, viral infection, Alzheimer's disease; or
2. other conditions which are not usually treated by a mental health care provider using psychotherapy, psychotropic drugs, or similar methods of treatment.

**"Substance Abuse"** means alcoholism, drug abuse, or chemical dependency of any type.

**"Treatment Center"** means a health care facility (or its medical or psychiatric unit) which:
1. is licensed, certified or approved by the state where it is located;
2. has a program for inpatient treatment of substance abuse; and
3. provides such treatment based upon a written plan approved and supervised by a Physician.

GL3002-CERT-14 98

Specified Limit.
01/01/00

## VOLUNTARY VOCATIONAL REHABILITATION BENEFIT PROVISION

**BENEFIT.** If an Insured Employee is Disabled and is receiving Policy benefits; then he or she may be eligible for a Vocational Rehabilitation Benefit. This Benefit consists of services which may include:
1. vocational evaluation, counseling, training or job placement;
2. job modification or special equipment; and
3. other services which the Company deems reasonably necessary to help the Insured Employee return to work.

The Company will determine the Insured Employee's eligibility and the amount of any Benefit payable.

**ELIGIBILITY.** An Insured Employee may be eligible for this Benefit, if the Company finds that he or she:
1. has a Disability that prevents the performance of his or her regular occupation; and, after the Own Occupation Period, also lacks the skills, training or experience needed to perform any other gainful occupation;
2. has the physical and mental abilities needed to complete a Program; and
3. is reasonably expected to return to work after completing the Program; in view of his or her degree of motivation and the labor force demand for workers in the proposed occupation.

The Company must also find that the cost of the proposed services is less than its expected claim liability.

**AMOUNT.** The amount of any Vocational Rehabilitation Benefit will not exceed the Company's expected claims liability. This benefit will not be payable for services covered under the Insured Employee's health care plan or any other vocational rehabilitation program. Payment may be made to the provider of the services, at the Company's option.

**CONDITIONS.** Either the Company, the Insured Employee, or his or her Physician may first propose vocational rehabilitation. When a Program is approved by the Company, the Policy's definition of "Disability" will be waived during the rehabilitation period; but it will be reapplied after the Program ends. The Company will determine the amount and duration of any Long Term Disability benefits payable after the Program ends.

**LIMITATION.** The Policy will not cover any period of Disability for an Insured Employee who has received a Vocational Rehabilitation Benefit and has failed to complete the Program, without Good Cause.

## DEFINITIONS

**"Good Cause",** as used in this provision, means the Insured Employee's:
1. documented physical or mental impairments, which render the Insured Employee unable to take part in or complete a Program;
2. involvement in a medical program, which prevents or interferes with the Insured Employee's taking part in or completing a Program; or
3. participating in good faith in some other vocational rehabilitation program, which:
   (a) conflicts with taking part in or completing a Program developed by the Company; and
   (b) is reasonably expected to return the Insured Employee to work.

**"Program"** means a written vocational rehabilitation program:
1. which the Company develops with input from the Insured Employee; his or her Physician; and any current or prospective employer, when appropriate; and
2. which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

GL3002-CERT-14.3 98

Voluntary Rehab.
01/01/00

## REASONABLE ACCOMMODATION BENEFIT

If an Insured Employee of the Employer is Disabled, and is receiving Policy benefits; then the Employer may be eligible for a Reasonable Accommodation Benefit. This Benefit reimburses the Employer for 50% of the expense incurred for reasonable accommodation services for the Insured Employee; but will not exceed:

1. a maximum benefit of $5,000 for any one Insured Employee; or
2. the Company's expected liability for the Insured Employee's Long Term Disability claim (whichever is less).

Such services may include:

1. providing the Insured Employee a more accessible parking space or entrance;
2. removing barriers or hazards to the Insured Employee from the worksite;
3. special seating, furniture or equipment for the Insured Employee's work station;
4. providing special training materials or translation services during the Insured Employee's training; and
5. other services the Company deems reasonably necessary to help the Insured Employee return to work with the Employer.

ELIGIBILITY FOR BENEFIT. The Company will determine the Employer's eligibility to receive the Benefit. To qualify for the Benefit, the Employer must have an Insured Employee:

(a) whose Disability prevents the performance of his or her regular occupation at the Employer's worksite;
(b) who has the physical and mental abilities needed to perform his or her own or another occupation at the Employer's worksite; but only with the help of the proposed accommodation; and
(c) who is reasonably expected to return to work with the help of the proposed accommodation.

The Company must also find that the requested Reasonable Accommodation Benefit is less than the expected liability for the Insured Employee's Long Term Disability claim.

WRITTEN PROPOSAL. The reasonable accommodation services must be provided in accord with a written proposal, which is developed with input from:

1. the Employer;
2. the Insured Employee; and
3. his or her Physician, when appropriate.

The proposal must state the purpose of the proposed accommodation; and the times, dates and costs of the services.

CONDITIONS. Either the Company, the Employer, the Insured Employee, or his or her Physician may first propose an accommodation.

The proposal must be approved by the Company in writing.

The Company will then reimburse the Employer, upon receipt of proof that the Employer:

1. has provided the services for the Insured Employee; and
2. has paid the provider for the services.

GL3002-CERT-14.3

01/01/00

## PRIOR INSURANCE CREDIT UPON TRANSFER OF INSURANCE CARRIERS

To prevent loss of coverage for an Employee because of a transfer of insurance carriers, the Policy will provide Prior Insurance Credit for employees insured under the prior carrier's policy on its termination date as follows.

**FAILURE TO BE ACTIVELY-AT-WORK DUE TO INJURY OR SICKNESS.**   Subject to premium payments, the Policy will provide coverage to an Employee:
  1.    who was insured by the prior carrier's policy at the time of transfer; and
  2.    who was not Actively-At-Work due to Injury or Sickness on the Policy's Effective Date.

The coverage will be that provided by the prior carrier's policy, had it remained in force.  The Company will pay:
  1.    the benefit that the prior carrier would have paid; minus
  2.    any amount for which the prior carrier is liable.

**DISABILITY DUE TO A PRE-EXISTING CONDITION.**  Benefits may be payable for a Total Disability due to a Pre-Existing Condition for an Employee who:
  1.    was insured by the prior carrier's policy at the time of transfer; and
  2.    was Actively-At-Work and insured under the Policy on the Policy's Effective Date.

The benefits will be determined as follows:
  1.    The Company will apply the Policy's Pre-Existing Condition Exclusion.  If the Insured Employee qualifies for benefits, such Insured Employee will be paid according to the Policy's benefit schedule.
  2.    If the Insured Employee cannot satisfy the Policy's Pre-Existing Condition Exclusion, the prior carrier's pre-existing condition exclusion will be applied as follows:
      a.    If the Insured Employee satisfies the prior carrier's pre-existing condition exclusion, giving consideration towards continuous time insured under both policies, such Insured Employee will be paid according to the prior carrier's benefit schedule.
      b.    If the Insured Employee cannot satisfy the Pre-Existing Condition Exclusion of the Policy or that of the prior carrier, no benefit will be paid.

Prior Insurance Credit

## FAMILY INCOME BENEFIT

The Company will pay a lump sum benefit to the Eligible Survivor, when proof is received that an Insured Employee died:
1. after Disability had continued for 180 or more consecutive days; and
2. while receiving a Monthly Benefit.

The benefit will be equal to three times the Insured Employee's Last Monthly Benefit.

"Last Monthly Benefit" means the gross Monthly Benefit payable to the Insured Employee immediately prior to death. Any reductions for Other Income Benefits, or for earnings the Insured Employee received for Partial Disability Employment, will not apply.

"Eligible Survivor" means the Insured Employee's:
1. surviving spouse; or, if none
2. surviving children who are under age 25 on the Insured Employee's date of death.

If payment becomes due to the Insured Employee's children; then payment will be made to:
1. the surviving children, in equal shares; or
2. a person named by the Company to receive payments on the children's behalf.

This payment will be valid and effective against all claims by others representing, or claiming to represent, the children.

Three Month Survivor Benefit

EXHIBIT "B"

**Long Term Disability Claim Employee's Statement**

---

**To Be Completed By The Employee**

**A. Information about you**

| Last Name | First | Middle Initial |
|---|---|---|
| Medeiros | Mark | A. |

| Address | City | State/ Province | Zip |
|---|---|---|---|
| 8 Steven Av. P.O.Box 1456 | Westport | MA. | 02790 |

| Telephone | Social Security Number |
|---|---|
| (508) 636 2293 | 012 56 3290 |

| Date of Birth (Month, Day, Year) | Height | Weight | |
|---|---|---|---|
| 6-1-62 | 5' 10" | 187 | ☑ Rt Handed  ☐ Lt. Handed   ☑ Male  ☐ Female   ☐ Single  ☑ Married   ☐ Widowed  ☐ Divorced |

Your Employer (include division if applicable)
Curtain Factory Outlet inc.

Occupation
Internet Manager

**B. Information about your family** (required to determine your eligibility for Social Security benefits)

Spouse's Name (Last, First)
Medeiros        Brenda

| Spouse's Social Security Number | Date of Birth (Month, Day, Year) | Is your spouse employed? |
|---|---|---|
| | 10-14-65 | ☑ Yes  ☐ No |

| Children under age 25: Name (Last, First) | Date of Birth (Month, Day, Year) |
|---|---|
| Leach        Joshua | 11-9-85 |
| Medeiros        Tyler | 4-19-92 |

**C. Information about the condition causing your disability**

**1. For pregnancy or illness, answer the following questions:**

What were your first symptoms?
numbness in Right hand + foot , Difficulty with bowel movements

| When did you first notice them? | Date you were first treated by a physician (Month, Day, Year) |
|---|---|
| April 1996 | April 1996 |

**2. For an injury, answer the following questions:**

Where and how did the injury occur?

| Date the injury occurred (Month, Day, Year) | Date you were first treated by a physician (Month, Day, Year) |
|---|---|

**3. For illness or injury, answer the following questions:**

Why are you unable to work? decrease in my fine motor skills, chronic limp
due to chronic fatigue, difficulty with blurred vision (left eye)

Before you stopped working, did your condition require you to change your job or the way you did your job?
☑ Yes  ☐ No   If yes, explain I drove Company truck for 15 years

Is your condition related to your occupation?
☐ Yes  ☑ No   If yes, explain

Have you filed, or do you intend to file a Workers' Compensation claim?
☐ Yes  ☑ No

**D. Information about the disability**

| Last day you worked before the disability (Month, Day, Year) 12-13-02 | Did you work a full day? ☐ Yes  ☑ No   If no, explain | Date you were first unable to work? (Month, Day, Year) 12-16-02 |
|---|---|---|

| Have you returned to work? ☐ Yes  Part time (date) _____  Full time (date) _____  ☑ No | If you have not returned to work, do you expect to? ☐ Yes  Part time (date) _____  Full time (date) _____  ☑ No |
|---|---|

Are you currently self-employed or working for another employer?
☐ Yes  ☑ No   If so, give details.

(Continued on next page)

**E. Information about physicians and hospitals**

First medical attention for the current disability was given by (complete below):

| Doctor's Name | Telephone: ( 617 ) 638-8456 | Specialty |
|---|---|---|
| Dr. Carlos Kase | Fax: ( ) | Neurologist |
| Address (Street, City, State, Zip) | | Dates Seen |
| 720 Harrison Ave. Boston MA 02118 | | To present |

List all other physicians and hospitals you have seen for this condition:

| Doctor's Name | Telephone: 508 )672-1800 | Specialty |
|---|---|---|
| Dr. Kenneth Piva | Fax: ( ) | Primary Care |
| Address (Street, City, State, Zip) | | Dates Seen |
| 829 South Main St Fall River MA 02724 | | 9-02 To present |
| Doctor's Name | Telephone: (508 )995-8200 | Specialty |
| Dr. David Kleithy | Fax: ( ) | O.D. MD |
| Address (Street, City, State, Zip) | | Dates Seen |
| 300A Faunce Corner Rd Dartmouth MA 02747 | | 3-02 To present |
| Doctor's Name | Telephone: ( ) | Specialty |
| | Fax: ( ) | |
| Address (Street, City, State, Zip) | | Dates Seen |
| | | To |

| Hospital | | |
|---|---|---|
| Boston Medical Center | | |
| Address (Street, City, State, Zip) | | Dates of Confinement |
| 720 Harrison Ave Boston MA 02118 | | 6-02 To 6-02 |

Have you ever had the same or a similar condition in the past?

☐ Yes ☒ No   If yes, complete the following concerning your past treatment:

| Doctor's Name | Telephone: ( ) | Specialty |
|---|---|---|
| | Fax: ( ) | |
| Address (Street, City, State, Zip) | | Dates Seen |
| | | To |

| Hospital | | |
|---|---|---|
| | | |
| Address (Street, City, State, Zip) | | Dates of Confinement |
| | | To |

**F. Information about other disability income**

(Check the other income benefits you are receiving or are eligible to receive as a result of your disability and complete the information requested.)

| Source of Income | Amount | / (wk., mon.) | Date claim was filed | Date payments began | Date payments ended |
|---|---|---|---|---|---|
| Social Security Retirement | $ Ø | / | | | |
| Social Security Disability/ Yourself | $ Ø | / | | | |
| Social Security Disability/ Dependents | $ Ø | / | | | |
| Canadian Pension Plan | $ Ø | / | | | |
| Workers' Compensation | $ Ø | / | | | |
| State Disability | $ Ø | / | | | |
| Pension/ Retirement | $ Ø | / | | | |
| Pension/ Disability | $ Ø | / | | | |
| Short Term Disability | $ Ø | / | | | |
| Unemployment | $ Ø | / | | | |
| No-Fault Insurance | $ Ø | / | | | |
| Railroad Retirement | $ Ø | / | | | |
| Other (include individual or group benefits): | $ Ø | / | | | |

**G. Information about income tax withholding**

If your request for benefits is approved, should Jefferson Pilot Financial Insurance Company withhold income taxes from your benefit checks?

☒ Yes ☐ No   If yes, how much should be withheld from each check. Federal taxes (minimum is $88.00 per month) $ _____ .00

**H. Signature (Required for all claims)**

Under what other Jefferson Pilot Financial Insurance policies are you currently covered?

The above statements are true and complete to the best of my knowledge and belief.

x _Mark A. Woodem_    1-1-03

Signature of Employee    Date

GLC-01252

**Long Term Disability Claim Employer's Statement**

**To Be Completed By The Employer**

This claim is for (Employee's Name and Address) P.O. Box 1456 Westport MA | Social Security Number | Date of Birth
Mark A. MEDEIROS 8 STEVEN Av. | 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 | 6-1-62

**A. Information about the employer**

Company's Name
Curtain Factory Outlet inc. | Group Policy Number | Class Number
| 0000 100245 39 0000 |
Address (Street, City, State, Zip)
420 Quequechan St Fall River MA. | Telephone: ( 508 ) 676-1921
| Fax: ( 508 ) 679-9680
Name and address of division where employee works (if different from above) | Telephone: ( )
| Fax: ( )

**B. Information about the employee**

Date employee was hired (Month, Day, Year) 5/9/82 | Date employee became insured under this plan? 01/01/2000 Date employee became insured under prior plan? 12/1/82 | What was the employee's regularly scheduled work week? 37.5 hours per week 7.5 hours per day

**C. Information needed for withholding and reporting taxes**

Does employee contribute post-tax dollars toward the premium? ☐ Yes ☒ No If yes, what percent is paid by the employee? _____ %
**If you leave this section blank, we will assume it is 100% employer contribution and calculate FICA taxes accordingly.**

**D. Information about the claim**

Were there any changes to the employee's job responsibilities due to the disabling condition before the employee became fully disabled?
☐ Yes ☒ No If yes, what were the changes and when were they made?

What was the employee's permanent job on his or her last day at work?
INTERNET MANAGER | How long had the employee been in this job? SINCE 12-19-99

Last day employee actually worked (Month, Day, Year) 12-13-02 | On that day, did the employee work a full day?
| ☐ Yes ☒ No If no, how many hours were worked?

Why did employee stop working?
Doctors orders | Is the employee's condition work related?
| ☐ Yes ☒ No

Has a claim been filed with Workers' Compensation?
☐ Yes ☒ No If yes, send initial report of illness or injury and award notice.

Name, address and telephone number of your compensation carrier

Name, address and telephone number of your medical insurance carrier
TUFTS HEALTH PLAN, PO BOX 9196, WATERTOWN MA 02471 PH: 1-800-818-4388

**E. Information about your pension plan (do not complete for maternity claim)**

Do you have a pension plan? ☒ Yes ☐ No | If yes, what type? ☐ Defined benefit ☐ Defined contribution | ☒ 401(k) ☐ Profit sharing | ☐ Other: (specify)

Is the employee eligible for your pension plan?
☒ Yes ☐ No If no, why? | If eligible, does the employee participate?
| ☒ Yes ☐ No If no, why?

If the employee is participating, when is he or she eligible for benefits under the plan? (Month, Day, Year)
NOT UNTIL RETIREMENT AGE AS SPECIFIED ON PAGES 9 & 10 OF ATTACHED COPY OF 401(k) PLAN

**NOTE: If any portion of this pension benefit is attributable to the employee's contribution, please provide details including the percentage of his/her contribution to the total contribution. This should include a copy of the contract.** — ATTACHED

**F. Information about your rehire or return-to-work policies**

Does your company have a rehire or return-to-work policy for disabled employees?
☒ Yes ☐ No

What is the name and title of the manager we should contact if we identify a rehabilitation or return-to-work option?

**G. Information about the employee's salary**

The employee (Check all that apply)
☐ is paid hourly (what is the hourly rate?) $ _____ ☒ is salaried ☐ receives commissions ☐ receives bonuses

Will employee file for disability benefits provided by any employer/ employee labor management, state disability or union welfare plan?
☒ Yes ☐ No If yes, what is the weekly amount? $ _____ When do benefits begin? _____ End? _____

Is this employee eligible for salary continuation?
☐ Yes ☒ No If yes, what is the weekly amount? $ _____ When do benefits begin? _____ End? _____

(Continued on next page)

GLC-01252 | Page 2 of 12
4/02



**Principal**

**Financial Group**

Mailing Address:
Des Moines, IA 50392-0001

| Principal Mutual
Life Insurance Company | *Enrollment Information*

## A. Personal Information (Please Print or Type)

Plan Sponsor Name
CURTAIN FACTORY OUTLET

Contract No.
14 - 06805

Loc. No.

Member Name
MARK ANTHONY MEDEIROS

Soc. Sec. No.
1012 - 56 - 3290

Birthdate
06 / 01 / 19 62

Date of Employment
5 / 9 / 19 82

☑ Male
☐ Female

Rehired?
☐ Yes  ☑ No

Rehired Date
/ / 19

## About This Form

**A.** Complete Personal Information.

**B.** Choose the percentage of salary you want to defer now. If you want to change this percentage in the future, contact your plan sponsor.

**C.** Choose how you want your money invested. See the back of this form for examples.

**D.** Choose your beneficiary by completing the Beneficiary Designation, form GP 24488. If you need a copy, contact your plan sponsor.

Sign and date this form, keep the bottom copy for yourself, and return the top two copies to your plan sponsor.

20.00 PER WEEK

## B. Contributions  (Please complete even if you choose to defer 0%.)

Reduce my current and future salaries by _____ % of pay per period (enter 0% here if you choose not to defer). This agreement applies to amounts earned until changed by me in writing. I understand my plan sponsor may need to reduce my deferral percentage only when required to meet certain plan limits.

## C. Account Selection   (Note: All choices may not be available under your plan.)

| Investment Types | | |
|---|---|---|
| 1. Guaranteed * | 50 | % |
| 2. U.S. Stock | 25 | % |
| 3. Money Market | _____ | % |
| 4. Bond & Mortgage | 25 | % |
| 5. Stock Index | _____ | % |
| 6. _____ | _____ | % |
| 7. _____ | _____ | % |
| 8. _____ | _____ | % |
| Totals | 100 | % |

Show the percentage of contribution you want directed to each account. The column must add up to 100%. Your plan sponsor will tell you which investments are available.

\* Choose a guarantee period when directing money to the Guaranteed Interest Account. Ask your plan sponsor for the available guarantee period(s).

I elect a ___3___ year guarantee period.

## Member Signature

Member Signature
X  Mark a Medeiros

Date
12 / 30 / 19 92

## Principal Mutual Life Insurance Company Use Only

Date Rec'd

By

Plan Entry Date
/ / 19

GP 33565-1      White - Principal Mutual  ●  Yellow - Plan Member  ●  Pink - Member      401(k)/All $ Invest same -- EE Direct

**Reporting the employee's basic monthly earnings**

Find the definition of basic monthly earnings that matches your contract for this employee and follow the instructions given.

**Definitions of Basic Monthly Earnings**

a.   salary only (no commissions, bonuses, etc.), complete question 1 below
b.   previous year's W-2 form, complete question 5 below (attach W-2)
c.   sole proprietor, complete question 8 below
d.   previous year's K-1 form, complete question 6 below (attach K-1)

e.   salary and commissions, complete questions 1 and 3 below
f.   salary, commissions and bonuses, complete questions 1, 3 and 4 below
g.   salary and deferred compensation, complete questions 1 and 2 below
h.   salary, deferred compensation and commissions, complete questions 1, 2 and 3 below
i.   salary, deferred compensation, commissions and bonuses, complete questions 1, 2, 3 and 4 below
j.   salary and K-1 earnings, complete questions 1 and 6 below

k.   W-2 with deferred compensation, complete questions 2 and 5 below
l.   partnership agreement, complete question 7 below
m.   teacher's contract, complete question 1 below
n.   any other definition, complete question 9 below

1)   On the last day employee worked, what was his or her basic monthly salary? (Divide annual salary by 12 or multiply weekly salary by 52 and divide by 12. Teachers divide annual salary by 12)

1  _2718.99_
20.00 A WEEK OR

2)   On the last day the employee worked, what was his or her monthly pre-tax contribution to your deferred compensation plan?

2  _86.67 PER MONT_

3)   How much had the employee received in commissions in the 12 months (or the period of employment if less than 12 months) immediately preceding the last day worked? $ _____ . Divide this number by 12, or the length of employment if less than 12 months, to find the average monthly commissions.

3  _N/A_

4)   How much had the employee received in bonuses in the 12 months (or the period of employment if less than 12 months) immediately preceding the last day worked? $ _635.00_ . Divide this number by 12, or the length of employment if less than 12 months, to find the average monthly bonuses.

4  _52.92_

5)   What were the employee's earnings as shown on the W-2 form of the year immediately preceding the disability?

5  _34608.30_

6)   What were the employee's earnings as shown on the K-1 form of the year immediately preceding the disability?

6  _Ø_

7)   As of the last day the employee worked, what were the budgeted annual earnings as determined by the written partnership agreement in effect? (Do not include dividends, interest or return of capital) $ _____

7  _N/A_

8)   As of the last day the employee worked, what was the sole proprietor's annual net profit (1040 Schedule C gross income minus total deductions minus depreciation) averaged over the 3 years immediately preceding the disability or the period of sole proprietorship if less than 3 years?

8  _N/A_

9)   For definitions other than those above, calculate the monthly earnings as they are defined in your contract. If earnings are based on salary as expressed on a particular document, send us a copy of the document.

9  _____

**H.  Required Attachments and Signature**

If the employee contributes to the premiums, attach a copy of the enrollment form.
If salary is based on a W-2, K-1, 1099, or a similar document, attach a copy of the document.
If you have medical information from the employee's file relating to this disability, please attach copies.
If a workers' compensation claim is filed, send initial report of injury or illness and award notice.

Name of person completing this form (If this claim is approved for disability benefits, the benefit check will be sent to the employee with a carbon copy to you.)   _JANICE BRANCO_

X _Janice Branco_                          _BOOKKEEPER_                    _02-24-03_
  Signature                                Title                          Date

| Control number | | Void ☐ | **Copy D For Employer.**<br>OMB No. 1545-0008 | | |
|---|---|---|---|---|---|

| Employer identification number<br>04-2744810 | 1 Wages, tips, other compensation<br>33588.30 | 2 Federal income tax withheld<br>3340.12 |
|---|---|---|
| Employer's name, address, and ZIP code<br>Curtain Factory Outlet<br>P.O. Box 4116<br>Fall River    MA   02723 | 3 Social security wages<br>34608.30 | 4 Social security tax withheld<br>2145.71 |
| | 5 Medicare wages and tips<br>34608.30 | 6 Medicare tax withheld<br>501.94 |
| | 7 Social security tips | 8 Allocated tips |
| Employee's social security number<br>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 | 9 Advance EIC payment | 10 Dependent care benefits |
| Employee's name, address, and ZIP code<br>MARK A.      MEDEIROS<br><br>8 STEVEN AVE.<br>WESTPORT, MA   02790 | 11 Nonqualified plans | 12a See instructions for box 12<br>D    1020.00 |
| | 13 Statutory employee ☐  Retirement plan ☒  Third-party sick pay ☐ | 12b |
| | 14 Other | 12c |
| | | 12d |

| State<br>MA | Employer's state ID number<br>79-53674-0 | 16 State wages, tips, etc.<br>33588.30 | 17 State income tax<br>1463.38 | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| | | | | | | |

**W-2** Wage and Tax Statement    **2001**

39-1908647

Department of the Treasury—Internal Revenue Service
**For Privacy Act and Paperwork Reduction Act Notice, see separate Instructions.**

| a Control number | | | **Copy D For Employer.** OMB No. 1545-0008 | | |
|---|---|---|---|---|---|

| | Vold ☐ | |

| b Employer identification number 04-2744810 | 1 Wages, tips, other compensation 32262.66 | 2 Federal income tax withheld 3272.27 |
|---|---|---|
| c Employer's name, address, and ZIP code | 3 Social security wages 33262.66 | 4 Social security tax withheld 2062.28 |
| Curtain Factory Outlet P.O. Box 4116 Fall River     MA   02723-0400 | 5 Medicare wages and tips 33262.66 | 6 Medicare tax withheld 482.43 |
| | 7 Social security tips | 8 Allocated tips |
| d Employee's social security number 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 | 9 Advance EIC payment | 10 Dependent care benefits |
| e Employee's name, address, and ZIP code MARK A.     MEDEIROS | 11 Nonqualified plans | 12a See instructions for box 12 D  1000.00 |
| 8 STEVEN AVE. WESTPORT, MA   02790 | 13 Statutory employee   Retirement plan ☒   Third-party sick pay | 12b |
| | 14 Other | 12c |
| | | 12d |

| 15 State MA | Employer's state ID number 79-53674-0 | 16 State wages, tips, etc. 32262.66 | 17 State income tax 1285.96 | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|

Form **W-2** Wage and Tax Statement

**2002**
(Rev. February 2002)

39-1908647

Department of the Treasury—Internal Revenue Service
**For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.**
**BW2ERD**     82623     NTF 2558202

**Long Term Disability Claim Job Analysis**

**To Be Completed By The Employee's Supervisor**

This claim is for (Employee's Name)

_Mark A. MEDEIROS_

| Employee's Social Security Number | Date of Disability (Month, Day, Year) |
|---|---|
| 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 | 12-13-02 |

**A.  General information about the employee's job**

| Job Title | Minimum education or training required |
|---|---|
| _Internet Manager_ | _high school diploma_ |

Does the employee perform supervisory functions?

☐ Yes  ☒ No   If yes, how many people are supervised? _____ Describe job duties.

Check the items below that relate to the employee's job. Use these definitions for the frequency of occurrence:

**Occasionally** means the person does the activity up to 33% of the time.

**Frequently** means the person does the activity 34% to 66% of the time.

**Continuously** means the person does the activity 67% to 100% of the time.

| | Occasionally | Frequently | Continuously |
|---|---|---|---|
| Relate to others | ☒ | ☐ | ☐ |
| Written and verbal communication | ☐ | ☐ | ☒ |
| Reasoning, math and language | ☐ | ☒ | ☐ |
| Makes independent judgments | ☐ | ☒ | ☐ |

Which of the following describe the employee's working environment? Check all that apply.

☐ Unprotected heights   ☒ Changes in temperature or humidity   ☐ Exposure to dust, fumes and gases

☐ Being near moving machinery   ☐ Driving automotive equipment   ☐ Other hazards

Is the employee required to travel?

☐ Yes  ☒ No   If yes, complete the following information:

How does the employee travel? (Automobile, plane, train, etc.)

Where does the employee travel?  _N/A_      What percent of the time does the employee travel?  _N/A_

**B.  Information about the physical aspects of the employee's job**

Check the items below that relate to the employee's job and complete the information requested. Use these definitions for the frequency of occurrence:

**Occasionally** means the person does the activity up to 33% of the time.

**Frequently** means the person does the activity 34% to 66% of the time.

**Continuously** means the person does the activity 67% to 100% of the time.

| Activity | Occasionally | Frequently | Continuously | Describe Activity | Weight |
|---|---|---|---|---|---|
| ☐ Standing | ☒ | ☐ | ☐ | | |
| ☐ Walking | ☐ | ☒ | ☐ | | |
| ☐ Sitting | ☐ | ☒ | ☐ | | |
| ☐ Balancing | ☒ | ☐ | ☐ | | |
| ☐ Stooping | ☐ | ☒ | ☐ | | |
| ☐ Kneeling | ☒ | ☐ | ☐ | | |
| ☐ Crouching | ☒ | ☐ | ☐ | | |
| ☐ Crawling | ☒ | ☐ | ☐ | | |
| ☐ Reaching/ working overhead | ☒ | ☐ | ☐ | | |
| ☐ Climbing: | ☐ | ☒ | ☐ | | |
| ☐ Stairs | ☐ | ☐ | ☐ | | |
| Number of stairs: _62_ | | | | | |
| ☐ Ladders | ☒ | ☐ | ☐ | | |
| Height of Ladder: _____ | | | | | |
| ☐ Pushing | ☒ | ☐ | ☐ | _Carriage_ | _20-30_ lbs. |
| ☐ Pulling | ☒ | ☐ | ☐ | _pallets_ | _100_ lbs. |
| ☐ Lifting/ carrying | ☒ | ☐ | ☐ | _boxes_ | _5-20_ lbs. |

(Continued on next page)

**Can the job be performed by alternating sitting and standing?**

☒ Yes  ☐ No

**Does the job require using the feet to operate foot controls?**

☐ Yes  ☒ No    If yes, on what type of equipment?

**How important is good vision in the job?**

*extremely important*

| What are the major tasks requiring use of one or both hands? | One Hand | Both Hands |
|---|---|---|
| operating a computer | ☐ | ☒ |
| packing boxes for shipment | ☐ | ☒ |
| | ☐ | ☐ |
| | ☐ | ☐ |

**C. Information about the job as it relates to the disability**

Can the job be modified to accommodate the disability either temporarily or permanently?

☐ Yes  ☒ No    If yes, explain

Is it possible to offer the employee assistance in doing the job (through use of technology or personal assistance for example)?

☐ Yes  ☒ No    If yes, explain

**D. Attachments and Signature** (Attach a copy of the employee's job description) — *ATTACHED*

Name of person completing this form    JANICE BRANCO

| | | |
|---|---|---|
| x *Janice Branco* | BOOKKEEPER | 02-24-03 |
| *Mark E. Medeiros* | Internet Manager | 1-14-03 |
| Signature | Title | Date |

Telephone ( 508 )    Fax ( 508 ) 679-9680

Job Description

Mark A. Medeiros
E-Store Manager/Warehouse Personnel

Mark A. Medeiros is responsible for all duties that pertain to the on-line store and warehouse services at Curtain Factory Outlet. These duties include maintenance of the web page and processing of orders that are received either via telephone or by the World Wide Web. Ensures all credit card purchases have been processed and all e-mail verifications have been sent out. Packages all orders and sends them daily via UPS. He is responsible for curtain returns and the paperwork that is involved with a return. He shares responsibility for receiving and shipping of warehouse inventory. Also, helps stock pallets with goods and assists with the loading of the company truck.

## Long Term Disability Claim Physician's Statement

EXHIBIT "C"

This form should be completed by the physician who was treating the claimant when he or she last worked.

**To Be Completed By The Attending Physician**

**A. General Information**

This claim is for (Patient's Name)  *Mark Medeiros*

| Patient's Social Security Number | Height | Weight | Blood Pressure | Date of Birth (Month, Day, Year) |
|---|---|---|---|---|
| 012 - 56 - 3290 | 5'10" | 183 lbs | | 6/1/62 |

Primary Diagnosis including ICD 9 or DSM code

**B. Complete this section for normal pregnancy, then go to section E.**

| What was the date of the last menstrual period? | What is the expected date of delivery? |
|---|---|
| | |

| What is the expected length of postpartum recovery? | What was the first date of treatment? | What was the last date of treatment? |
|---|---|---|
| | | |

**C. Complete this section for all conditions except normal pregnancy.**

Symptoms  *Weakness right arm & leg, 'blurred' vision*

Objective Findings  *weakness of ® limbs, afferent pupillary defect OS*

Are there secondary conditions contributing to the disability?
☐ Yes  ☒ No   If yes, what are they? (Please include ICD 9 or DSM code.)

| If this is a cardiac condition, what is the functional capacity? (American Heart Association) | ☐ Class 1 - No limitation | ☐ Class 3 - Marked limitation |
|---|---|---|
| | ☐ Class 2 - Slight limitation | ☐ Class 4 - Complete limitation |

| When did symptoms first appear? | Date of the patient's first visit (Month, Day, Year) | Date you believe the patient was first unable to work (Month, Day, Year) |
|---|---|---|
| 1996 | | 12/13/02 |

| Date of the patient's last visit (Month, Day, Year)  12/13/02 | How often do you see the patient?  Every 2-3 months |
|---|---|

Is the patient's condition work related?
☐ Yes  ☒ No   If yes, explain:

Has the patient undergone surgery?
☐ Yes  ☒ No   If yes, give date, procedure and result.

If no, do you expect surgery to be performed in the future?
☐ Yes  ☒ No   If yes, give date and type of surgery.

What medication is the patient currently taking?
*Avonex*

Please indicate other types and frequencies of treatment.
*Amantadine, 100 mg BID*

Has the patient been referred to a medical rehabilitation or therapy program?
☐ Yes  ☒ No   If yes, give details.

Have you referred the patient for other types of consultations?
☒ Yes  ☐ No   If yes, give details.
*Ophthalmologist : Dr. David Kilty*

Has the patient been hospital confined?
☐ Yes  ☒ No   If yes, complete the following:

Name of Hospital

| Address | Dates of Confinement through |
|---|---|
| | |

(Continued on next page)

**D. Information about the patient's inability to work**

Briefly describe restrictions and limitations.

Restrictions (What the patient SHOULD NOT do)

Climb stairs, lifting heavy objects

Limitations (What the patient CANNOT do)

—

What is your prognosis for recovery?  Uncertain

Has patient achieved maximum medical improvement?

☐ Yes  ☒ No    If no, complete the following:

How soon do you expect fundamental changes in the patient's medical condition?

☐ 1 - 2 months          ☐ 5 -6 months

☒ 3 - 4 months          ☐ more than 6 months

Give details concerning expected improvement or deterioration:

Improvement may be in the form of ↑'d strength of (R) limbs

In an eight hour workday, claimant can: *(Circle full hourly capacity for each activity)*

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Sit | 1 | ②  | 3 | 4 | 5 | 6 | 7 | 8 |
| Stand | ① | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| Walk | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |

| Are there restrictions in: | Yes | No | Comments |
|---|---|---|---|
| Lifting/Carrying | ☒ | ☐ | |
| Use of hands in repetitive actions | ☒ | ☐ | |
| Use of feet in repetitive movements | ☒ | ☐ | |
| Bending | ☒ | ☐ | |
| Squatting | ☒ | ☐ | |
| Crawling | ☒ | ☐ | |
| Climbing | ☒ | ☐ | |
| Reaching above shoulder level | ☐ | ☒ | |
| Other (please specify) | ☐ | ☐ | |

When do you expect claimant to return to prior level of functioning?  Uncertain

Would you recommend vocational rehabilitation for this patient?

☐ Yes  ☒ No

**E. Required Attachments and Signature**

**After you have fully completed this form, attach copies of the following materials:**

- **− Office notes for the period of treatment for the last two years**
- **− Test results showing objective findings**
- **− Hospital discharge summaries**
- **− Consulting physician reports**

Your Name:  Carlos Kase  M.D.

Degree:  MD    781- 331- 8944

Specialty:  B.U. NEUROLOGY ASSOC.
1221 Main St., Suite 401

Telephone: (   )
Fax: ( 781 )  337-2891

Address:  So. Weymouth, MA 02190

x _____

Signature of Attending Physician (no stamp)

4/4/03

Date

## Group LTD CLAIM

### AUTHORIZATION TO RELEASE INFORMATION

**To Be Completed By The Employee:**

**Mandatory Authorization** (Authorization to obtain additional information concerning this claim.)

To Any:    Physician, hospital, pharmacist or other provider of health care services; insurer; employer; group policyholder; government agency; consumer reporting agency; acquaintance; policy or benefit plan administrator:

This authorizes you to give Jefferson Pilot Financial Insurance Company, its affiliates and representatives, any information, data or records you have regarding my medical history and treatment (including records pertaining to psychiatric, drug or alcohol use, and any medical condition I may now have or have had), and any information, data or records regarding my activities (including records relating to my Social Security, Workers' Compensation, credit, financial, earnings and employment history) needed to evaluate my claim for benefits. I understand that any such information obtained may be provided to a person or agency requested by Jefferson Pilot Financial Insurance Company to assist with this purpose. This authorization is valid during the pendency of my claim. I understand that I have the right to request and receive a copy of this authorization. A photocopy of this authorization is as valid as the original.

Date _1 - 1 - 03_    Signature of Claimant (if not a minor) _Mark a Medim_

Date _1 - 1 - 03_    Signature of Insured _Mark a Medim_

_0000 10024539  00000_        _CURTAIN FACTORY OUTLET, INC_
Policy Number                         Employer

---

**Optional Authorization** (Authorization to provide information to your employer)

You are not required to sign this authorization in order to submit a claim for long term disability benefits to Jefferson Pilot Financial Insurance Company.

I (your name) _Mark A. Medeiros_    authorize Jefferson Pilot Financial Insurance Company to disclose or furnish to my employer any and all information in Jefferson Pilot Financial Insurance Company's possession with respect to any illness, including mental illness, drug or alcohol abuse, or any injury and to provide information regarding any medical history, consultations, prescriptions, treatments or benefits and copies of all applicable records that may be requested. My employer will not disclose to any third party any information received from Jefferson Pilot Financial Insurance Company pursuant to this authorization without my express written consent.

A photostatic copy of this authorization is to be considered as valid as the original and is effective for the duration of the claim.

**Any person who knowingly, and with intent to injure, defraud, or deceive any insurance company, files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony.**

X _Mark a Medim_                _1 - 1 - 03_
Signature                                        Date



**JEFFERSON PILOT FINANCIAL**

Jefferson Pilot Financial Insurance Company, P.C.    2616, Omaha, NE 68103-2616
Phone (877) 843-3948 or (402) 361-7300
Fax (877) 843-3950

## GROUP LONG TERM DISABILITY CLAIM APPLICATION



**EMPLOYEE —** *form completion information*

---

**APPLICATION FOR GROUP LTD — Instructions**

A.   **Complete and sign the authorization on the reverse side of this page.** This will allow our insurance carrier or their representative to secure additional information (if necessary) to make a decision on your request for benefit payments (do not detach).

B.   **Complete employee claim statement in full.**

   **Attach** •   A copy of Social Security and other income entitlement awards (or forward when received)

C.   **Give this authorization and attached claim application to the physician treating you** (if more than one, obtain other forms for completion from employer). Instruct your attending physician to send his statement along with yours to the insurance carrier.

D.   When those forms are received by the Insurance Company, they will advise you of your eligibility for benefits or of any additional information that may be needed.

---

Do <u>Not</u> Detach

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

MARK MEDEIROS

**DEFENDANTS**

JEFFERSON PILOT FINANCIAL INS. CO.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___ Bristol ___
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Richard K. Latimer/Kistin Babitsky
Latimer & Beitman, Box 590, 13 Falmouth
Heights Road, Falmouth, MA  02541-0590
(508) 540-1606

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury — Med. Malpractice
☐ 365 Personal Injury — Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**HABEAS CORPUS:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☒ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS — Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

29 U.S.C. Sect. 1001, et seq., ERISA
Wrongful denial of disability claim

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $ ___

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE ___
DOCKET NUMBER ___

DATE  11/19/04

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ___ AMOUNT ___ APPLYING IFP ___ JUDGE ___ MAG. JUDGE ___

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)

   MARK MEDEIROS v. JEFFERSON PILOT FINANCIAL INS. CO.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ☐  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ☒  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.     *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

   ☐  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

   ☐  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

   ☐  V.    150, 152, 153.

   CA - 12466 JLT

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES ☐    NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES ☐    NO ☒
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES ☐    NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES ☐    NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES ☒    NO ☐

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division ☒    Central Division ☐    Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division ☐    Central Division ☐    Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES ☐    NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   Richard K. Latimer/Kistin Babitsky Latimer & Beitman

ADDRESS   Box 590, 13 Falmouth Heights Road, Falmouth, MA  02541

TELEPHONE NO.   (508) 540-1606

(Coversheetlocal.wpd - 10/17/02)